Marcus T. BAUMANN, Appellant,

v.

ARIZONA DEPARTMENT OF
CORRECTIONS, et al.,
Appellees.

No. 83–2699.

United States Court of Appeals,
Ninth Circuit.

Argued Dec. 13, 1984.

Submitted Jan. 9, 1985.

Decided Feb. 28, 1985.

Marcus T. Baumann, pro se.

John H. Ryley, Phoenix, Ariz., for appellees.

Before WRIGHT, POOLE, and WIGGINS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

On this appeal from the dismissal of a complaint seeking damages and equitable relief for denial of custodial release on a

work furlough program, we are confronted initially with a jurisdictional question. Following oral argument, the parties were required to file additional memoranda on the question whether the district court made final disposition of all claims.

■ Although a litigant asserts that an order is final for purposes of appellate review, this court must determine *sua sponte* whether its jurisdiction is properly invoked. *Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1171 n. 1 (9th Cir.1984). The record reflects the district court's reasoning that summary judgment could be granted due to Baumann's failure to discharge his burden in opposing defendants' summary judgment motion.

■ On the merits, the district court believed that *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), mandated summary disposition. Moreover, we are persuaded by representations made by the appellant and by counsel for the appellees that the district court intended to dispose of the entire case on immunity grounds. We have jurisdiction to reach the merits of this appeal and we affirm the judgment.

FACTS

Baumann was convicted in Arizona state court of 25 counts relating to the sale of unregistered securities, in connection with the sale of fraudulent mortgages to unsuspecting purchasers. He was convicted also in federal court of four counts of mail fraud in connection with a land fraud scheme in Arizona. He was imprisoned in May 1978. He was released from federal custody in September 1981 and transferred to state prison.

In December 1981, despite approval by several strata of decision-makers, Baumann was denied a work release. In June 1982, a second work release hearing was cancelled. In July, he was denied a home furlough. He filed suit challenging the denial of his applications for furloughs and seeking declaratory and injunctive relief.

On August 4, 1982, Judge Bilby found that Baumann had a protectible liberty interest in work release and ordered a work release hearing to be held within 30 days. About August 18, Baumann was granted parole and on September 8 he was released. His suit for declaratory and injunctive relief was dismissed as moot.

Baumann then filed a civil rights suit under 42 U.S.C. § 1983 seeking equitable relief and damages for violation of his constitutional rights. The district court granted summary judgment in favor of the defendants.

STANDARD OF REVIEW

Our task in reviewing a summary judgment is "identical to that of the trial court." *M/V American Queen v. San Diego Marine Construction Corp.*, 708 F.2d 1483, 1487 (9th Cir.1983). Viewing the evidence in the light most favorable to Baumann, we must determine under a *de novo* standard whether there are no genuine issues of material fact and whether the defendants are entitled to judgment as a matter of law. *Id.; Fruehauf Corp. v. Royal Exchange Assurance of America, Inc.*, 704 F.2d 1168, 1171 (9th Cir.1983).

ANALYSIS

I. DUE PROCESS

Baumann contends that the denial of his work and home furloughs constituted a deprivation of liberty without due process, in violation of the Fourteenth Amendment.

A. *Identifying a Protected Liberty Interest*

■ The threshold question in due process analysis is whether a constitutionally protected interest is implicated. *Meachum v. Fano*, 427 U.S. 215, 223–24, 96 S.Ct. 2532, 2537–38, 49 L.Ed.2d 451 (1976). Not every "grievous loss" suffered at the hands of the state will require the procedural protection of constitutional due process. *Id.* at 224, 96 S.Ct. at 2538. A prisoner has no independent constitutional right to conditional release before the expiration of a valid sentence. *Greenholtz v. Inmates of the Nebraska Penal and Cor-*

*rectional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979).

▮ A state may create a constitutionally protected liberty interest by establishing regulatory measures that impose substantive limitations on the exercise of official discretion. *Hewitt v. Helms,* 459 U.S. 460, 470–71, 103 S.Ct. 864, 870–71, 74 L.Ed.2d 675 (1983). To establish a protected interest, a prisoner must show " 'that particularized standards or criteria guide the State's decisionmakers.'" *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) (quoting *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 467, 101 S.Ct. 2460, 2466, 69 L.Ed.2d 158 (1981) (Brennan, J., concurring)). There must be "objective and defined criteria" which the decision-maker is required to respect. *Id.*

[8] The statistical probability that a particular treatment will be applied does not generate constitutional protection. *Connecticut Board of Pardons v. Dumschat, supra,* 452 U.S. at 465, 101 S.Ct. at 2464. Unspoken understandings are unprotected. *Jago v. Van Curen,* 454 U.S. 14, 20, 102 S.Ct. 31, 35, 70 L.Ed.2d 13 (1981).

▮ Published prison regulations may create a protected interest. *Olim v. Wakinekona, supra,* 461 U.S. at 249–50, 103 S.Ct. at 1747–48. It is unclear whether unpublished administrative policy statements may do so. The Supreme Court has not considered that issue, but circuit courts generally have held that explicit written pronouncements may create a protected interest. *See Lucas v. Hodges,* 730 F.2d 1493, 1501–04 (D.C.Cir.), *vacated as moot,* 738 F.2d 1392 (D.C.Cir.1984) (per curiam) (reviewing cases). *Contra id.* at 1507–08 (Starr, J., dissenting in part).

▮ An issue left open by the Supreme Court in *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, supra,* is whether state standards governing prison release must eliminate all discretion in decision-making to create a protected liberty interest. In *Greenholtz,* the Court characterized the conditional release decision as a subtle, predictive judgment, based on subjective appraisal of many elusive considerations. *Id.* 442 U.S. at 8–10, 99 S.Ct. at 2104–2105. The possibility of parole creates only a hope, not protected by due process. *Id.* at 11, 99 S.Ct. at 2105. However, the Court found that Nebraska created a protected interest in parole by mandating that parole "shall" be granted, "unless" one of four specially designated exceptions applied. *Id.* at 11–12, 99 S.Ct. at 2105–2106. The Court emphasized the uniqueness of the Nebraska parole statute and cautioned that whether any other state statute created a liberty interest would have to be decided on a case-by-case basis. *Id.* at 12, 99 S.Ct. at 2106.

▮ We are persuaded that the unique "shall/unless" formula of the Nebraska statute was decisive in *Greenholtz. Boothe v. Hammock,* 605 F.2d 661, 664 (2d Cir.1979). No protected entitlement to release exists unless a state scheme includes that formula. *Id.* Guidelines used to structure the exercise of discretion in making release decisions do not create a protected interest. *Id.* Accordingly, this circuit joins the majority of other circuits that endorse a restrictive interpretation of *Greenholtz. E.g., Slocum v. Georgia State Board of Pardons & Paroles,* 678 F.2d 940, 941 (11th Cir.), *cert. denied,* 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 612 (1982); *Candelaria v. Griffin,* 641 F.2d 868, 869–70 (10th Cir.1981) (citing cases); *Williams v. Briscoe,* 641 F.2d 274, 277 (5th Cir.), *cert. denied,* 454 U.S. 854, 102 S.Ct. 299, 70 L.Ed.2d 147 (1981). *See generally Brandon v. District of Columbia Board of Parole,* 734 F.2d 56, 61–62 (D.C.Cir. 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 811, 83 L.Ed.2d 804 (1985) (noting circuit conflict, declining to choose sides).

Baumann asserts that *Winsett v. McGinnes,* 617 F.2d 996 (3d Cir.1980) (en banc), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981), controls the disposition of this case. There, the Third Circuit held that guidelines setting out the goals of prison programs established pe-

rimeters limiting the exercise of officials' discretion. *Id.* at 1006–07. The court reasoned that a liberty interest arises when a prisoner meets the work release eligibility requirements and release would be consistent with established work release policy. *Id.* at 1007. We reject the Third Circuit's reasoning in *Winsett.*

### B. *Arizona Law*

■ Published regulations establish the broad objectives of all furlough programs of the Arizona Department of Corrections (ADOC).[1] The eligibility standards for application for a furlough also are provided by published regulation.[2] Those regulations do not include substantive criteria specifically limiting the discretion of officials in making decisions concerning a particular application.

■ The ADOC Internal Management Policy and Procedure Manual includes Policy No. 432, which provides a specific procedure for handling work furlough applications. By statute, any Arizona rule not filed with the Secretary of State is void. Ariz.Rev.Stat.Ann. § 41–1004. However, the state cannot arbitrarily deny privileges based on the lack of regulations if it grants privileges under unfiled regulations to other prisoners. *Brown v. State,* 117 Ariz. 476, 479, 573 P.2d 876 (1978). If Policy No. 432 creates a protected interest, its unfiled status will not bar Baumann's claims.

■ Policy Statement No. 432 provides specifically that the grant of a furlough is "at the sole discretion of the Director in accordance with [the] procedures." The statement's procedural structure alone does not establish a constitutionally protected interest. *Hewitt v. Helms, supra,* 459 U.S. at 471, 103 S.Ct. at 871.

Arizona has established no mandatory standard comparable to the "shall/unless" release standard in *Greenholtz.* On the contrary, the standards are basic and general. The clear intent is to leave the work release decision to official discretion. The Supreme Court's general policy is one of noninterference with prison officials' release decisions. *See Dumschat,* 452 U.S. at 464, 101 S.Ct. at 2464. We hold that Baumann has no constitutionally protected liberty interest in custodial release on work or home furlough.

### C. *Immunity*

In *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738, the Supreme Court held that "government officials performing discretionary functions generally are shielded

---

1. The objectives of all furlough programs are as follows:
 1. Increase inmate's willingness and ability to accept as their responsibility both the obligations and rights of citizenship.
 2. Provide factual relevant information on an inmate's behavior on which an institution can base its decisions concerning that inmate and provide the Arizona Board of Pardons and Paroles with additional information on which it can make its determinations.
 3. Provide the opportunity for inmates to establish and maintain positive family and community relationships.
 4. Increase an inmate's motivation to participate in institutional programs.
 5. Reduce the inmate's isolation from the community thereby reducing the tension encountered by inmates upon their return to the community.
 6. Provide an additional resource for efficient and effective management of inmates.
 7. Reduce the dependence caused by institutionalization.
 Ariz.Admin.Comp.R. 5–1–302(D).

2. The rule provides:
 A. Any inmate under commitment to the [ADOC] who meets the following conditions is eligible to apply for a furlough:
 1. Assigned more than 180 days at the facility in which the inmate is presently confined.
 2. Has a residence which can be approved by the Community Services Division at a destination within the State of Arizona.
 3. At the time of application is within six months of minimum parole eligibility, or has served at least three calendar years on a sentence of ten years or more maximum.
 B. Compliance with the eligibility and request requirements does not guarantee approval of a request for furlough. Exceptions to the criteria set out in Paragraph A must be directed to the Superintendent of the Institution. The Superintendent will approve or disapprove the recommended exception to the criteria.
 Ariz.Admin.Comp.R. 5–1–303.

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

 The district court here found the state officials immune because there was no clearly established constitutional right to work release at the time Baumann's was denied. Because the recognition of a constitutional right would occur only under the Third Circuit's minority position in *Winsett*, the existence of that right could not have been clearly established. Baumann's due process claim was properly dismissed.

## II. EQUAL PROTECTION

Baumann contends that prison officials denied his furlough in violation of his rights under the equal protection clause because he was a member of the class of "notorious white collar criminals." U.S. Const. amend. XIV. The officials deny that a policy against early release of white collar criminals was in effect at the time Baumann applied for furloughs.

 Assuming that policy did exist at the time, it would violate the equal protection clause only if it did not have a rational relationship to a legitimate state interest. *See Dandridge v. Williams*, 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970); *Brandon*, 734 F.2d at 60. States are not prohibited from imposing special treatment on a class of offenses. *Skinner v. Oklahoma*, 316 U.S. 535, 540, 62 S.Ct. 1110, 1112, 86 L.Ed. 1655 (1942); *United States ex rel. Scott v. Illinois Parole & Pardon Board*, 669 F.2d 1185, 1191 (7th Cir.), *cert. denied*, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982).

 Legitimate state interests involved in early prison release decisions include general and special deterrence and promoting public respect for the administration of justice. The type of offense involved is rationally related to the need for deterrence. *Block v. Potter*, 631 F.2d 233, 238 (3d Cir.1980). The type of offense is related also to public perception of the fairness of the administration of justice. *See Pugliese v. Nelson*, 617 F.2d 916, 918–19 (2d Cir.1980).

## III. CRUEL AND UNUSUAL PUNISHMENT

 The Eighth Amendment, applicable to the states through the Fourteenth, establishes limits on the conditions that states may impose on prisoners. *Rhodes v. Chapman*, 452 U.S. 337, 344–45, 101 S.Ct. 2392, 2397–98, 69 L.Ed.2d 59 (1981). The "cruel and unusual" standard is flexible and dynamic, based on "the evolving standards of decency that mark the progress of a maturing society." *Id.* at 345–46, 101 S.Ct. at 2398–99 (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion)); *Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir.1981). Prison conditions must not be "grossly disproportionate to the severity of the crime" nor involve the "wanton and unnecessary infliction of pain." *Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399.

 General limitation of jobs and educational opportunities is not considered punishment. *Id.* at 348, 101 S.Ct. at 2400; *Hoptowit v. Ray*, 682 F.2d 1237, 1254–55 (9th Cir.1982). Sensory deprivation or excessive limitation of activity may constitute an Eighth Amendment violation. *Hoptowit*, 682 F.2d at 1257–58.

 Baumann argues that the emotional trauma and financial injury caused by the denial of anticipated work release, along with the additional nine months of incarceration before his parole, were "torture" forbidden by the Eighth Amendment. His disappointment does not offend the standards of decency in modern society.

## IV. OTHER CLAIMS

Baumann challenges the prison officials' cancellation of work furlough hearings and their failure to provide a hearing after ordered to do so by Judge Bilby. These claims are meritless. Within the 30-day period prescribed by Judge Bilby, Baumann

was granted parole and his claim for work release became moot.

Baumann contends that a conspiracy to violate his civil rights existed among prison officials and the Arizona Attorney General. Since no violation of his civil rights occurred, the conspiracy claim is meritless.

CONCLUSION

The judgment is affirmed.