**Carl Douglas McQUILLION, Plaintiff,**

v.

**Ruth RUSHEN, former Director, California Department of Corrections, and Reginald Pulley, former Warden, San Quentin State Prison, Defendants.**

**No. C-83-2801-CAL.**

United States District Court,
N.D. California.

June 19, 1986.

Carl Douglas McQuillion, pro se.

Karl C. Mayer, Kenneth C. Young, Thomas P. Dove and Bruce M. Slavin, Deputy Attys. Gen., San Francisco, Cal., for defendants.

## OPINION AND ORDER FOR SUMMARY JUDGMENT

LEGGE, District Judge.

Plaintiff Carl Douglas McQuillion is a California state prisoner incarcerated in a state prison. He is serving a term of life imprisonment for two counts of felony murder.

He filed this suit in June 1983. In his original and amended complaints he alleges that California's Determinate Sentencing Act of 1976 ("DSL"), (Cal.Penal Code § 1170 *et seq.*), and subsequent regulations of the California Department of Corrections ("CDC"), violate his constitutional rights as a prisoner who was convicted and sentenced under California's Indeterminate Sentence Law ("ISL") (former Cal.Penal Code § 1168, amended effective July 1, 1977). Plaintiff claims that he has been denied: (1) due process; (2) freedom from unreasonable searches and seizures; (3) protection from *ex post facto* laws; (4) equal protection of the laws; and (5) protection from cruel and unusual punishment. He seeks declaratory relief and $100,000 in damages from each defendant.[1]

---

1. Originally the State of California and the Director of the CDC were the defendants named in this suit. On April 23, 1984 this court (C.J. Robert F. Peckham) granted the defendants' motion to dismiss the State of California, but granted plaintiff leave to add the following defendants: former CDC Director Rushen; former San Quentin Warden Pulley; Associate San Quentin Warden Cribbs; Associate Programs Warden Rodriguez; and Governor Deukmejian. On January 2, 1985, the undersigned court granted further leave to plaintiff to amend his complaint. However, since the amended complaint which plaintiff filed pursuant to those orders names only two defendants, Ruth Rushen and Reginald Pulley, the court must assume that plaintiff has abandoned his claims against the other defendants, and they are dismissed.

The defendants have moved for summary judgment. Plaintiff filed an opposition to the motion. The court has reviewed the moving and opposing papers, the record, and the authorities, and concludes that summary judgment should be entered for defendants for the reasons set forth in this opinion.[2]

### I.

Prior to this motion for summary judgment the defendants brought several motions to dismiss which resolved two of plaintiff's claims: the due process claim and the search and seizure claim.

The substance of plaintiff's due process claim is that California's change from ISL to DSL deprived plaintiff, without due process of law, of a right to rehabilitation, because ISL emphasized rehabilitation while DSL emphasizes punishment. This court (C.J. Robert F. Peckham) in its order of April 23, 1984, found that the due process clause of the Fourteenth Amendment does not directly confer a constitutional right of rehabilitation upon state prisoners, and dismissed the due process clause claim to the extent that it was based on the federal constitution. The court retained this claim to the extent that plaintiff attempted to establish a state-created right to rehabilitation. The defendants requested reconsideration of this ruling and dismissal of the due process claim in its entirety. In his order of October 11, 1984, Judge Peckham then dismissed the entire due process claim, finding that while a state-created liberty interest in rehabilitation would be protected by the Fourteenth Amendment, no such interest has been created by California legislation or case law.

On April 19, 1985 the defendants brought another motion to dismiss plaintiff's amended complaint, including his Fourth Amendment claim that his right to protection from unreasonable searches and seizures had been violated. At that time plaintiff also sought reconsideration of the dismissal of his due process claim. In its order of October 3, 1985, the undersigned court denied plaintiff's motion for reconsideration, and granted defendants' motion to dismiss the Fourth Amendment claim with prejudice.

During the pendency of this case the defendants have also moved for dismissal of the entire complaint for lack of subject matter jurisdiction and for dismissal of the *ex post facto*, equal protection, and cruel and unusual punishment claims. These motions were denied without prejudice.

Therefore, three of plaintiff's claims remain to be considered in this summary judgment motion: (1) the *ex post facto* claim; (2) the denial of equal protection claim; and (3) the cruel and unusual punishment claim.

### II.

In denying defendant's prior motion to dismiss the *ex post facto* claim, Judge Peckham found that DSL unquestionably applied retrospectively, and that defendants had not established that the retrospective application did not increase the length of plaintiff's sentence, or make the conditions of his confinement more onerous. In this summary judgment motion, this court now has an undisputed factual record of plaintiff's sentencing and parole eligibility.

The record shows that plaintiff was sentenced to life imprisonment under ISL and began serving his sentence on January 18, 1974. Effective January 1, 1977 ISL was repealed and replaced by DSL. Plaintiff was first reviewed for parole eligibility on May 16, 1979, at which time the Board of Prison Terms applied post-DSL parole guidelines in calculating his parole release date of October 7, 1998. This DSL date was later advanced to April 7, 1997.

Plaintiff was also assigned an alternative parole release date which was calculated by ISL parole guidelines, following the decision of *In Re Stanworth*, 33 Cal.3d 176,

---

**2.** Because of the mixed nature of the relief which plaintiff requests in this action, the court has evaluated this action and defendants' motion under standards of both petitions for writ of habeas corpus and motions for summary judgment in plenary suits.

187 Cal.Rptr. 783, 654 P.2d 1311 (1982). In that case the California Supreme Court held that DSL and its parole regulations were *ex post facto* violations to the extent that they imposed later parole release dates on life prisoners who were sentenced under ISL. That court held that the Board of Prison Terms must compute parole release dates for life prisoners according to both ISL and DSL standards, and release the prisoner on the earlier of the two dates. Plaintiff's ISL parole release date is April 6, 1998, which was later advanced to February 6, 1998. That date is later than plaintiff's DSL release date. Hence, California conversion from ISL to DSL did not have an adverse *ex post facto* impact on plaintiff's sentence and release.

### III.

Plaintiff also contends that the *ex post facto* clauses of the United States Constitution (art. I § 10 cl. 1) and the California Constitution (art. I § 9) are violated by post-DSL CDC regulations which set up the Work Incentive Program ("WIP"). Plaintiff claims that the WIP requires him to work for privileges which he formerly enjoyed just as a result of good behavior, and that it caused the cancellation of a hobby program in which he participated. The hobby program allowed him to earn work credits by pursuing his hobby, and earn money from the sale of his finished projects.

The WIP conditions a prisoner's non-mandatory privileges (family visits, canteen purchases, telephone use, excused time off, special package receipt, extra yard time, and access to entertainment and other recreational activities) on the prisoner's participation in work/training assignments. Title 15 Cal.Admin.Code § 3044. The program was created in response to an uncodified statute that requires "all able-bodied prisoners in the state prisons be directed to work," and which directs the CDC to "seek to achieve self-sufficiency of the prison system through the development of prison labor and skills." Stats.1982, c. 1 § 1.

Regulations adopted pursuant to a legislative directive, such as the WIP, are subject to the same *ex post facto* scrutiny as direct legislative enactments. *See In Re Stanworth*, 33 Cal.3d 176, 181, 187 Cal. Rptr. 783, 654 P.2d 1311 (1982). A penal regulation violates the *ex post facto* clause if it operates retrospectively and disadvantages the substantive rights of the offender by imposing additional punishment. *Weaver v. Graham*, 450 U.S. 24, 28–29, 101 S.Ct. 960, 963–64, 67 L.Ed.2d 17 (1981). Additional punishment occurs if the law imposes a punitive condition that did not previously exist, or lengthens the inmate's effective sentence. *Id.* at 32, 101 S.Ct. at 966.

California law has long required able-bodied prisoners to work, Cal.Penal Code § 2700. Tying non-mandatory privileges to work participation does not create a new punitive condition. Nor does the WIP add to the effective length of plaintiff's sentence. Although plaintiff can no longer participate in his preferred work assignment, the hobby program, to earn credits and non-mandatory privileges, he may participate in other work programs to the same result. The difference simply does not rise to constitutional significance. Plaintiff has not demonstrated that his "quantum of punishment" has increased because of the WIP. Plaintiff's *ex post facto* claims are therefore dismissed.

### IV.

Plaintiff raises two equal protection claims. First he challenges the method by which the State of California grants post-conviction sentence reduction credits to life prisoners, as contrasted with the method for granting credits to non-life prisoners. Once a life prisoner has received a base term sentence, he may receive post-conviction credits to advance his parole release date. Under ISL the amount of the credits were discretionary. Former title 15 Cal. Admin.Code § 2392. Under DSL a life prisoner receives a suggested amount of four months of credit, reduced or increased at the discretion of the Board of Prison

Terms. Title 15 Cal.Admin.Code § 2290. In contrast, non-life prisoners may automatically receive day-for-day post-conviction credits for work/training program participation. Cal.Penal Code § 2933.

 Dissimilar systems of parole release, like dissimilar sentencing systems for different crimes, do not deny a prisoner equal protection of the laws if the distinctions are justified by a legitimate state interest and if the challenged system bears a reasonable relationship to that interest. *See People v. Marcias*, 137 Cal.App.3d 465, 472–75, 187 Cal.Rptr. 100 (1982). Life prisoners such as plaintiff have been convicted of felony murder, while non-life prisoners have been convicted of crimes which the legislature considers less serious. Accordingly, the state has a legitimate interest in adopting a slower, more careful process for releasing life prisoners on parole. That process may include evaluating the prisoner's crime, his work participation, and his behavior. Since this process is a reasonable method for insuring that life prisoners are not released until they have demonstrated that they have been rehabilitated or are no longer a danger to society, this disparate system of parole release does not deny life prisoners equal protection of the laws.

Plaintiff's second equal protection claim is that there is an improper distinction between the post-conviction credits which a life prisoner can earn under DSL compared with ISL. However, plaintiff simply mischaracterizes the two sets of parole release regulations. Under both sets of regulations a life prisoner who is found to be parole-suitable receives a base term, computed according to the gravity of his offense and the existence of aggravating or mitigating factors. *Compare* former Title 15 Cal.Admin.Code §§ 2200–2202 & 2300–2301 *with* current title 15 Cal.Admin.Code §§ 2280–2284. Both sets of regulations grant post-conviction credits to advance a prisoner's parole release date. The regulations differ only as to how these credits are granted. The ISL regulations gave the parole review panel the discretion to determine how many credits the prisoner had earned by evaluating all relevant factors, including not only work participation, but also behavioral improvement. Former title 15 Cal.Admin.Code § 2392. The DSL regulations recommend that four months of credit be given, but allow the Board of Prison Terms to increase or decrease the amount of credits depending upon the prisoner's performance. Title 15 Cal.Admin. Code § 2290. Further, since plaintiff's parole eligibility was determined not only under the DSL regulations but also under the ISL regulations, there is no basis for his claim that the DSL regulations deny him equal protection of the laws.

Plaintiff's claims of denial of equal protection are therefore dismissed.[3]

## V.

 Finally, plaintiff argues that the state's termination of the hobby work program in which he participated, and the institution of the Work Incentive Program that conditions non-mandatory privileges on work/training participation, constitutes cruel and unusual punishment in violation of the Eighth Amendment. The law is clear that limitations on, or the denial of, privileges and rehabilitation programs do not inflict unnecessary or wanton pain and therefore do not constitute cruel and unusual punishment. *Baumann v. Arizona Dept. of Corrections*, 754 F.2d 841, 846 (9th Cir.1985). Plaintiff's Eighth Amendment claim is dismissed.[4]

**3.** Additionally, plaintiff's allegations are dismissed to the extent that they appear to claim that the cancellation of a hobby program violated the equal protection clause by discriminating against plaintiff. Since the hobby program was cancelled in its entirety, there is no basis for a claim that its cancellation discriminated against plaintiff. Plaintiff's other claims regarding the cancellation of the hobby program are discussed elsewhere in this opinion.

**4.** Plaintiff's Eighth Amendment claim is also dismissed to the extent that it appears to allege that post-DSL regulations increased the level of violence at San Quentin. Plaintiff has not demonstrated a causal relationship between the alleged increase in violence and the DSL regula-

For the above reasons, defendants' motion for summary judgment is granted.

IT IS SO ORDERED.

---

tions, nor has he demonstrated that the prison officials failed to take reasonable steps to protect inmates from violence. *See Hoptowit v. Ray,* 682 F.2d 1237, 1250 (9th Cir.1982).