972 F.2d 1348
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Larry WILSON, Plaintiff-Appellant,
v.
Peter DEMOSTHENES, Defendant,
and
George DEEDS, Warden, et al., Defendant-Appellee.
 No. 91-16230.
 United States Court of Appeals, Ninth Circuit.*
 Submitted July 29, 1992.
Decided Aug. 6, 1992.
 
 Before TANG, BEEZER and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Larry Wilson, a Nevada state prisoner, appeals pro se the district court's summary judgment for George Deeds, Stephanie Nixon, and Charles Wolff in Wilson's 42 U.S.C. § 1983 action. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo, Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990), and affirm in part, vacate and remand in part.
 
 
 3
 Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catratt, 477 U.S. 317, 323 (1986). The moving party must demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 324. The nonmoving party then must go beyond the pleadings and affidavits and designate "specific facts showing there is a genuine issue for trial." Id. (quoting Fed.R.Civ.P. 56(e)). When reviewing summary judgment, this court views the evidence in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir.1987).
 
 
 4
 Wilson was a maximum close custody inmate in Nevada State Prison. Because the prison was being downgraded from a maximum close custody institution to a medium custody institution, Wilson was transferred to Ely State Prison, Nevada's new maximum security prison. At the time of the transfer, Wilson was serving disciplinary segregation time in a maximum lock-down unit for violating institutional rules.
 
 
 5
 Following his transfer, Wilson filed a civil rights complaint against Peter Demosthenes, Deeds, Nixon, and Wolff, alleging in Count I that they violated his right to due process of law guaranteed by the Fourteenth Amendment by transferring him from Nevada State Prison to Ely State Prison on September 6, 1989 without notifying him of the reason for the transfer and without conducting a Classification Committee hearing prior to his transfer.[1] In Count II Wilson alleged he was denied due process because he lost certain privileges as a result of the transfer. In Count III Wilson alleged he should have been released into the general prison population at Ely State Prison.
 
 
 6
 * Transfer
 
 
 7
 A liberty interest protected by the due process clause of the Fourteenth Amendment may arise from the clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983). An inmate has no protectible constitutional liberty interest in being confined to a particular institution under the due process clause of the Fourteenth Amendment. Meachum v. Fano, 427 U.S. 215, 225 (1976). Therefore, any protectible liberty interest concerning involuntary intra-state institution transfers must be state-created. See id. at 225-26. To demonstrate a liberty interest in such a transfer, an inmate must show there are particularized standards that guide and substantially limit the discretion of the decision-makers. Olim v. Wakinekona, 461 U.S. 238, 249 (1983).
 
 
 8
 Nevada does not create any protectible liberty interest concerning intra-state involuntary transfers that do not involve an increase in the assigned custody of the inmate. See Nev. Dep't of Prisons Admin.Reg. 552 ("[a]n inmate does not have any rights regarding a transfer or any particular placement within the Nevada Department of Prisons system."). Moreover, the Nevada regulations do not create a protectible liberty interest in a reclassification hearing prior to transfer. Id.
 
 
 9
 Here, Wilson contends he was entitled to a reclassification hearing prior to his transfer. This contention is without merit. Nevada inmates are not entitled to a reclassification hearing prior to their transfer. See id. Thus, Ely State Prison officials did not deny Wilson due process by transferring him without a prior hearing.[2] Therefore, the district court properly granted summary judgment on Count I. See Celotex, 477 U.S. at 323.
 
 II
 Loss of Privileges
 A. Credit for Educational Achievement
 
 10
 An inmate has no due process liberty interest in "work good time credits" unless state law creates such an interest. See Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 8-11 (1979); Toussaint v. McCarthy, 801 F.2d 1080, 1094 (9th Cir.1986), cert. denied, 481 U.S. 1069 (1987). State statutes or regulations which create only a possibility of early release through work good time credits do not create a liberty interest. See Greenholtz, 442 U.S. at 8-11; Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 844 (9th Cir.1985) (possibility of parole creates a hope of, not a liberty interest in, early release). Accord Cooper v. Sumner, 672 F.Supp. 1361, 1367 (D.Nev.1987) (Nevada statutes merely create possibility of early release through work good time credits). Because the Nevada statutes and regulations make the grant of work good time credits discretionary, they do not create a liberty interest. See Nev.Rev.Stat. §§ 209.443(3), 209.446(2); Nev. Dep't of Prisons Admin.Reg. 562. Accord Neal v. Hargrave, 770 F.Supp. 553, 557 (D.Nev.1991) (grant of work good time credits discretionary; therefore, no liberty interest created).
 
 
 11
 Here, Wilson contends he was deprived of his constitutional rights because he was unable to participate in an educational program and earn work good time credits for the first four months following his transfer to Ely State Prison. Because there is no liberty interest in earning work good time credit, Wilson was not deprived of due process when his participation in the education program was temporarily suspended. See Baumann, 754 F.2d at 846 (limitation of educational opportunities is "not considered punishment," and denial of work release does not violate Eighth Amendment). Accord Neal, 770 F.Supp. at 557. Therefore, the district court properly granted summary judgment on this claim. See Celotex, 477 U.S. at 323.
 
 B. Adequate Law Library
 
 12
 The Constitution requires that inmates be given "meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817, 824-25 (1977). The right of access requires prison authorities to provide "adequate law libraries or adequate assistance from persons trained in the law." Id. at 828.
 
 
 13
 Wilson's complaint alleged that the Ely State Prison law library is inadequate. Deeds, Nixon, and Wolff (collectively, "Deeds") did not address this allegation in their motion for summary judgment, and the district court did not address it in its order granting summary judgment. Because Wilson's allegation states a claim under Bounds, Deeds was not entitled to summary judgment on this claim. See Gumport v. China Int'l Trust and Inv. Corp. (In re Intermagnetics America, Inc.), 926 F.2d 912, 917-18 (9th Cir.1991). Accordingly, we vacate and remand for further consideration of this claim.
 
 C. Prison Conditions
 
 14
 Wilson alleged his transfer to Ely State Prison deprived him of his liberty interest because it had less desirable living conditions. The Supreme Court has rejected "the notion that any grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause." Meachum, 427 U.S. at 224. "[G]iven a valid conviction, the [inmate] has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." Id.
 
 
 15
 Here, Wilson contends he was deprived of a protected liberty interest when he was transferred to Ely State Prison because his exercise, shower and telephone privileges were less agreeable than those at Nevada State Prison.[3] Nevertheless, "[t]hat life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with more severe rules." Id. at 225.
 
 
 16
 Wilson also contends his constitutional rights were violated by Ely State Prison's unsanitary food service.[4] As Deeds demonstrated in their summary judgment motion, Wilson has failed to raise a triable issue of fact that conditions at Ely State Prison violated the Eighth Amendment. See id.; Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.1982) (institution fulfills Eighth Amendment obligations if it provides inmates with "adequate food, clothing, shelter, sanitation, medical care, and personal safety"). Therefore, summary judgment on this claim was proper. See Celotex, 477 U.S. at 324.
 
 III
 Release into General Prison Population
 
 17
 Wilson contends that he was deprived his due process right to be placed in the general prison population at Ely State Prison. Pursuant to the Nevada Code of Penal Discipline (the "Code"), when the Department of Prisons transfers an inmate with an incomplete disciplinary action, "the sending institution must: verify that disciplinary staff at the receiving institution receive the pending disciplinary action, fully understand what remains to be completed and what timetables apply." Nevada Code of Penal Discipline, Subheading E-- Responsibility, p 3--Transfers between Major Institutions--Disciplinary Responsibility.
 
 
 18
 Here, Wilson's complaint did not allege that Ely State Prison did not follow the proper procedures when he originally was placed in administrative segregation. Instead, the complaint alleged that he should have been placed in the general prison population solely because he was transferred from a medium security institution to a maximum security institution.[5]
 
 
 19
 In support of their summary judgment motion, Deeds provided evidence that Ely State Prison followed the requirements of the Code and the Administrative Regulations with respect to Wilson's transfer. Prior to his transfer, Wilson had been serving time in disciplinary segregation in a maximum lock-down unit for violating institutional rules.[6] Two days after his arrival at Ely State Prison, Wilson appeared before the Classification Committee, which reviewed Wilson's institutional file and denied him early release from segregation because of his extensive violations of institutional rules and regulations and his disciplinary background. Deeds also provided evidence that Wilson again appeared before the Classification Committee eleven days later. Thus, Deeds met their burden of proof under Fed.R.Civ.P. 56(c). Wilson failed to provide any evidence or affidavit to support his assertion that his transfer to Ely State Prison required that he automatically be released from disciplinary segregation. Therefore, summary judgment on Count III was proper. See Celotex, 477 U.S. at 323.
 
 
 20
 AFFIRMED IN PART, VACATED AND REMANDED IN PART.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The district court sua sponte dismissed without prejudice Wilson's action against Demosthenes for lack of service of process pursuant to Fed.R.Civ.P. 4(j)
 
 
 [2]
 Nev. Dep't of Prisons Admin.Reg. (AR) 552 provides that a hearing will be held "at the receiving institution as soon as practicable" following certain involuntary transfers. Deeds, Nixon, and Wolff provided undisputed evidence that a post-transfer hearing was held at Ely State Prison on September 8, 1989 and that a second classification hearing was held on September 19, 1989, in compliance with AR 552
 
 
 [3]
 In support of his contention, Wilson provided requests for administrative remedy he submitted to prison authorities, which stated that on two occasions staff shortages caused his exercise in the yard to be reduced to less than ten hours in a week. This does not rise to the level of an Eighth Amendment violation. Spain v. Procunier, 600 F.2d 189, 199-200 (9th Cir.1979) (one hour of exercise five days a week satisfies the Eighth Amendment)
 
 
 [4]
 In support of his allegation that the food service was unsanitary, Wilson provided requests for administrative remedy he had submitted to the prison staff. The requests stated that on a few occasions, he was served by a food service employee who was not wearing gloves or a culinary hat. This evidence fails to show that prison officials exhibited unnecessary or wanton disregard for the conditions under which they served meals. See Wilson v. Seiter, 111 S.Ct. 2321, 2326-27 (1991) (section 1983 claim that prison conditions violate the Eighth Amendment must show prison officials acted with deliberate indifference)
 
 
 [5]
 Wilson claimed he was a prisoner of a medium security institution. The record does not support this assertion. While Wilson was an inmate at Nevada State Prison, it was classified as a maximum security institution. It was in the process of being downgraded to a medium security institution at the time Wilson was transferred
 
 
 [6]
 At the time of his transfer, Wilson was scheduled to be released from disciplinary segregation in March 1991