8 F.3d 26
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Anthony S. GARCIA, Plaintiff-Appellant,
v.
Margaret M. PUGH, Regional Director of the Department of
Corrections-Southeast; Dan W. Carothers, Superintendent,
Lemon Creek Correctional Center; and Norm Anderson,
Sergeant at Lemon Creek Correctional Center, Defendants-Appellees.
 No. 92-36897.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 3, 1993.*
Decided Sept. 17, 1993.
 
 Before: BROWNING, SCHROEDER, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Anthony S. Garcia (Garcia), an Alaska state prisoner, appeals pro se the district court's order granting defendants' motion for summary judgment and denying his cross-motion for summary judgment in this action under 42 U.S.C. § 1983. We review de novo, Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986), and we AFFIRM.
 
 
 3
 Garcia alleges he was denied due process during classification hearings conducted at Lemon Creek Correctional Center (LCCC) where he was incarcerated as a pretrial detainee on charges of first degree murder, fourth degree assault, and contributing to the delinquency of a minor. The district court correctly concluded that defendants were entitled to summary judgment on this claim. Garcia had no constitutional right to a particular classification, see Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir.1987), and Alaska law creates no liberty interest in a particular classification because it leaves such action to the discretion of state officials. See 22 Alaska Admin.Code § 05.200 et seq.; Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 844 (9th Cir.1985).
 
 
 4
 Garcia also alleges he was subjected to cruel and unusual punishment and denied his due process rights as a pretrial detainee because conditions of confinement in the maximum security unit in which he was housed amounted to punishment. Prison officials may subject a pretrial detainee "to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." Bell v. Wolfish, 441 U.S. 520, 536-37 (1979). To be actionable under the Eighth Amendment, an alleged deprivation must satisfy both an objective component--i.e., was the deprivation sufficiently serious, and a subjective component--i.e., was the offending conduct wanton. LeMaire v. Maass, No. 91-3524, slip op. at 8784 (9th Cir. Aug. 13, 1993). Whether conduct can be characterized as wanton depends on the constraints facing the official. Wilson v. Seiter, 111 S.Ct. 2321, 2326 (1991). Where those constraints are "considerable," "wantonness" is defined as acting "maliciously and sadistically for the very purpose of causing harm." Id. at 8787 (quoting Whitley v. Albers, 475 U.S. 312 (1986)).
 
 
 5
 Garcia's placement in the maximum custody unit does not amount to punishment, but was based on the legitimate governmental purpose of ensuring the safety and security of the prison facility. While at LCCC, Garcia was disciplined for numerous infractions of the prison rules, including loud yelling, throwing a cup of feces at an officer, spreading soap over the floor of his cell to prevent LCCC staff from moving him to segregation, and assaulting staff and fellow inmates. Given the severity of the offense with which Garcia was charged (first degree murder), the pendency of murder charges against him in Colorado, and Garcia's lengthy criminal history, LCCC officials faced a considerable need to provide effective security measures.
 
 
 6
 In an effort to create a genuine issue of material fact as to defendants' intent in placing him in maximum custody, Garcia states that, in an ombudsman report on the complaint of a fellow inmate at LCCC, defendant Dan W. Carothers (Carothers), LCCC's superintendent, is quoted as stating that "prisoners need to hate maximum custody." This statement, however, is taken out of context. Carothers is reported stating: "[I]f an inmate can maintain good behavior in max, it shows real effort. An inmate has earned a release to less restrictive living ... [A]n inmate has to hate max more than the aggravation of dorm life and the constant temptation to fight." (Garcia's Cross-Mtn. for Summary Judgment, Exh. N at 6.) (Emphasis added.) Even if true, this statement does not evidence that, in placing Garcia in maximum custody, Carothers acted "maliciously and sadistically for the very purpose of causing harm." We agree with the district court that there is no evidence that Garcia's placement in the maximum custody unit was for punishment purposes.
 
 
 7
 Garcia also complains that he was subjected to cruel and unusual punishment via the condition in the maximum security unit. Specifically, Garcia was in lock-down 23 hours a day; he was allowed legal phone calls and only one family phone call per week; he was denied a special diet; he was handcuffed when taken to his shower privilege; he was hand and leg cuffed to and from court appearances; he was strip searched any time he left and returned to the unit; he was escorted by at least two guards; he was denied personal clothing and participation in religious services such as Bible study and treatment programs such as Alcoholics Anonymous; and he was denied "personal" contact visits and educational programs except those self-taught.
 
 
 8
 The district court found these conditions did not amount to an "extreme deprivation," see Hudson v. McMillian, 112 S.Ct. 995, 1000 (1992), and, thus, Garcia's claim failed. We agree. Many of the conditions of which Garcia complains resulted from his classification to maximum custody. See 22 Alaska Admin.Code § 05.271(4) (maximum custody level requires two escorts and use of restraints when necessary and appropriate). Others are based on legitimate security concerns of the institution. See LeMaire, slip op. at 8794-95 (upholding use of in-shower restraints for dangerous prisoners). Many, such as the denial of contact visits, do not rise to the level of a constitutional violation. See Toussaint v. McCarthy, 801 F.2d 1080, 1114 (9th Cir.1986), cert. denied, 481 U.S. 1069 (1987).
 
 
 9
 Lastly, Garcia contends he was denied equal protection when he was confined to the maximum security unit because, in classifying him to that unit, prison officials treated him differently than other similarly situated individuals. This claim is without merit. The decision to keep Garcia separate is rationally related to institutional security and the safety of other prisoners and staff.
 
 
 10
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3