19 F.3d 28
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Everett E. OSBORNE, Petitioner-Appellant,
v.
James BLODGETT; Ken Eikenberry; Kathryn Bail; George
Johnson; David L. Carlson; et al., Respondents-Appellees.
 No. 93-35005.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 22, 1994.*
Decided March 2, 1994.
 
 Before: SCHROEDER, CANBY, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Everett E. Osborne, a Washington state prisoner, appeals pro se the district court's order dismissing his petition for a writ of habeas corpus. Osborne contends that the revocation without a hearing of his early release date violated the (1) Due Process Clause, (2) Ex Post Facto Clause, and (3) Equal Protection Clause. We have jurisdiction pursuant to 28 U.S.C. Secs. 1291, 2253. We review de novo a district court's decision on a petition for writ of habeas corpus. Adams v. Peterson, 968 F.2d 835, 843 (9th Cir.1992) (en banc), cert. denied, 113 S.Ct. 1818 (1993). We affirm.
 
 
 3
 On 1 March 1982, Osborne and his wife, Mary Osborne, pleaded guilty to second degree murder.[1] On 19 May 1982, Osborne was sentenced to a maximum sentence of twenty-five years. In October 1982, the Washington State Board of Prison Terms and Paroles, now called the Indeterminate Sentence Review Board ("the Board"), set a minimum term of 204 months for Osborne, the outside range for the offense. The Board determined Osborne's potential "Good Time Release Date" ("GTRD") as 18 September 1993. See Wash.Rev.Code Secs. 9.95.070, 9.95.110. The Board also determined Osborne's "Earliest Possible Release Date" ("EPRD"), based on Osborne's potential "public safety reduction," as 18 March 1990. See 381 Wash.Admin.Code 1982 Supp. pp. 2034-39.
 
 
 4
 In September 1987, the Board reconsidered Osborne's minimum term pursuant to the then newly enacted Sentencing Reform Act ("SRA"), as required by Wash.Rev.Code Sec. 9.95.009(2) and Addleman v. Board of Prison Terms, 730 P.2d 1327, 1332 (Wash.1986) (en banc). Under the SRA, the sentencing range for second degree murder was 144-192 months. When adjusted for Osborne's presentence jail time, the range was 138-186 months. The Board, however, decided to maintain Osborne's minimum term at 204 months. The Board justified its decision by not only the facts of the murder, but also Osborne's prior assault history. The Board, by this act, disqualified Osborne from becoming eligible for parole on his EPRD. Assuming he earned all possible good time, Osborne would first become eligible for parole on his GTRD in September 1993.
 
 
 5
 In December 1988, Osborne filed a Personal Restraint Petition in which he challenged the Board's decision to retain his minimum term of 204 months and revoke the potential public safety reduction. In October 1989, the Commissioner of the Washington Supreme Court denied Osborne's petition. In January 1990, the Washington Supreme Court denied Osborne's motion to modify the Commissioner's ruling. In August 1991, Osborne filed the instant petition for a writ of habeas corpus.
 
 
 6
 * Due Process Clause
 
 
 7
 Osborne contends that when the Board reconsidered his minimum sentence it violated the Due Process Clause by revoking without a hearing the potential public safety reduction. Osborne argues that he obtained a liberty interest in his EPRD at the time it was initially set by the Board. This contention lacks merit.
 
 
 8
 "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979); Bergen v. Spaulding, 881 F.2d 719, 721 (9th Cir.1989). "Nevertheless, early release statutes can create a 'liberty interest protected by due process guarantees.' " Bermudez v. Duenas, 936 F.2d 1064, 1067 (9th Cir.1991) (per curiam) (quoting Greenholtz, 442 U.S. at 12). Moreover, "[a] state may create a constitutionally protected liberty interest by establishing regulatory measures that impose substantive limitations on the exercise of official discretion." Id. (citing Baumann v. Arizona Dept. of Corrections, 754 F.2d 841, 844 (9th Cir.1985). However, no protected entitlement to release exists unless a state scheme includes a formula which mandates release after the occurrence of specified events. Baumann, 754 F.2d at 844 (stating that the unique "shall/unless" formula was decisive in Greenholtz ). "That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained"; such a hope is not protected by due process. Greenholtz, 442 U.S. at 11; Baumann, 754 F.2d at 844.
 
 
 9
 Here, at the time Osborne was sentenced, the regulatory scheme did not command the release of a prisoner on his EPRD. Instead, the decision to grant a public safety reduction and set a EPRD was discretionary.[2] See 381 Wash.Admin.Code 1982 Supp. at 2030. In fact, the reduction is specifically called a "potential guideline reduction." Id. Unlike for the GTRD, the regulations set no conditions that would command the release of a prisoner on the EPRD. Instead, the potential public safety reduction is simply "an estimate of the likelihood of an offender having a specific parole performance." Id. at 2028. Because the regulatory scheme does not place substantive limitations on the Board's ability to deny the public safety reduction, Osborne had no protected entitlement to his EPRD. See Bermudez, 936 F.2d at 1067; Baumann, 754 F.2d at 844. Instead, the regulations created only a mere hope that Osborne would be paroled on his EPRD. See Greenholtz, 442 U.S. at 11; Baumann, 754 F.2d at 844.[3] Accordingly, the Board's decision to revoke Osborne's EPRD did not violate the Due Process Clause.
 
 II
 Ex Post Facto Clause
 
 10
 Osborne contends that when the Board reconsidered his minimum sentence it violated the Ex Post Fact Clause by revoking his EPRD This contention lacks merit.
 
 
 11
 The Ex Post Facto Clause prohibits law which "make more burdensome the punishment for a crime, after its commission." Collins v. Youngblood, 497 U.S. 37, 52 (1990). "[T]o fall within the ex post facto prohibition, two critical elements must be present: first the law, 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.' " Miller v. Florida, 482 U.S. 423, 430 (1987) (quoting Weaver v. Graham, 450 U.S. 24, 29 (1981)).
 
 
 12
 For those inmates sentenced before 1 July 1984, the Board was required to reconsider the inmate's original sentence, pursuant to the then newly enacted SRA. See Wash.Rev.Code Sec. 9.95.009(2); Addleman, 730 P.2d at 1332. "The Board [was] required to consider the purposes, standards and ranges of the SRA and make decisions reasonably consistent with them. The mandate for reasonably consistent decisions does not superimpose exactly the SRA upon the prior system." Addleman, 730 P.2d at 1332.
 
 
 13
 Here, in September 1987, the Board reconsidered Osborne's minimum term. The Board decided to maintain Osborne's minimum term of 204 months. The Board also decided to not award Osborne the potential public safety reduction. In evaluating Osborne's sentence, the Board applied the statutory and regulatory scheme that was in place when Osborne was originally sentenced. Thus, Osborne's sentence was not based on a new law that was applied retrospectively. See Collins, 497 U.S. at 52; Miller, 482 U.S. at 430. Therefore, the Board's reconsideration of Osborne's sentence did not violate the Ex Post Facto Clause. See Collins, 497 U.S. at 52; Miller, 482 U.S. at 430.
 
 III
 Equal Protection Clause
 
 14
 Osborne contends that when the Board reconsidered his minimum sentence it violated the Equal Protection Clause by revoking the potential public safety reduction. Osborne argues that the decision to revoke his EPRD but maintain his codefendant's EPRD violated the Equal Protection Clause because both defendants pleaded guilty to second degree murder. This contention lacks merit.
 
 
 15
 "The Constitution permits qualitative differences in meting out punishments and there is no requirements that two persons convicted of the same offense receive identical sentences." Williams v. Illinois, 399 U.S. 235, 243 (1970). Moreover, parole considerations require only a rational relationship to legitimate state interests. McGinnis v. Royster, 410 U.S. 263, 270 (1973); Baumann, 754 F.2d at 846.
 
 
 16
 Here, Osborne and his codefendant did not receive identical sentences for their crime. Osborne was sentenced to twenty-five years and his codefendant was sentence to twenty years. The Board decided that Osborne's codefendant had a higher probability of success on parole and, therefore, decided to award her a public safety reduction. With respect to Osborne, the Board stated that "based on psychological data available in the file, the nature of the crime and Mr. Osborne's record and statements surrounding this crime, ... we are not sure that this person should ever be paroled." Because the public safety reduction is based on the Board's determination of an inmate's probable success on parole, see 381 Wash.Admin.Code. 1982 Supp. at 2028, we conclude that such a policy furthers legitimate state interests, see McGinnis, 410 U.S. at 270; Baumann, 754 F.2d at 846. Because the Board's decision regarding Osborne's EPRD was made pursuant to such a policy, we conclude that the decision to deny Osborne his EPRD and grant it to his codefendant did not violate the Equal Protection Clause.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Over a six-month period, the Osbornes repeatedly beat and tortured Mary Osborne's fifteen-year-old daughter, Shelly. Shelly died on 9 December 1981, as a result of her injuries, including two fractured ribs, severe burns and bruises, and a ruptured bowel
 
 
 [2]
 The regulations do place two restrictions on the Board's discretion with respect to the determination of a prisoner's EPRD. First, if the offender has been found guilty of an infraction at a disciplinary hearing or if the offender had been convicted of another felony committed during his incarceration, the EPRD is automatically forfeited. See 381 Wash.Admin.Code 1982 Supp. at 2032. Second, if the adjustment granted by the Board results in a length of confinement that varies more than thirty days from the guideline length, the Board must give explicit reasons for its decision. See id. Such language, however, does not create a "shall/unless" formula that imposes substantive limitations on the exercise of the Board's discretion. See Bermudez, 936 F.2d at 1067; Baumann, 754 F.2d at 844
 
 
 [3]
 Moreover, under the regulatory scheme, Osborne's EPRD is related to his GTRD. 381 Wash.Admin.Code 1982 Supp. at 2030. Specifically, the EPRD is a further reduction based on the inmate's GTRD. Id. We have held that under Washington state law a prisoner does not obtain a liberty interest in his GTRD until the superintendent files a report certifying that the prisoner's conduct and work have been meritorious and recommending allowance of time credits. Bergen, 881 F.2d at 721-22 (interpreting Wash.Rev.Code. Sec. 9.95.070). Here, the superintendent did not certify that Osborne's conduct and work merited early release. Therefore, at the time he filed this petition, Osborne had not yet obtained a liberty interest in his GTRD. See id