**Gregory Lee GRAY, Plaintiff,**

v.

**Robert HERNANDEZ et al., Defendants.**

**Case No. 08 CV 1147 JM (AJB).**

United States District Court, S.D. California.

Aug. 27, 2009.

Gregory Lee Gray, Susanville, CA, pro se.

Attorney General, State of California Office of the Attorney General, San Diego, CA, Suzanne Antley, Attorneys Generals Office, Los Angeles, CA, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATIONS

### Doc. Nos. 14 and 26

JEFFREY T. MILLER, District Judge.

Plaintiff Gregory Lee Gray ("Plaintiff"), a state prisoner appearing *pro se* and *in forma pauperis,* initiated this action under 42 U.S.C. § 1983 on June 26, 2008, claiming his civil rights were violated in June 2007 when he was housed at R.J. Donovan State Prison. (Doc. No. 1, "Compl.") Named defendants Hernandez, Marrero, Sterling, and Peterson, move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Doc. No. 14, "Mot.") Plaintiff filed an opposition to the motion. (Doc. No. 22.)

On May 13, 2009, Magistrate Judge Leo S. Papas issued a Report and Recommendations (Doc. No. 26, "R & R") recommending this court GRANT in part and DENY in part the motion to dismiss. Plaintiff and Defendants each filed objections to the R & R. (Doc. No. 28, "Pl. Obj."; Doc. No. 30, "Defs.' Obj.") Plaintiff also submitted a reply to Defendants' objections. (Doc. No. 33, "Pl. Reply.")

Having carefully considered the thorough and thoughtful R & R, the record before the court, Plaintiff's and Defendants' objections, and the applicable authorities, the court wholly **ADOPTS THE R & R.**

### I. Background

On January 22, 2007, while housed at Donovan State Prison, Plaintiff filed a grievance against Defendants Hernandez, Marrero, Sterling, and Peterson, complaining they had denied him access to the law

library and to the courts. (Compl. at 1.) Plaintiff's grievance and subsequent appeals were denied up to the third level of review. Plaintiff then filled out a SC–100 form in preparation for filing a suit in Small Claims Court against the same defendants. (Compl. at 3.) Prior to filing the suit, Plaintiff gave Defendants Sterling and Peterson each a note in which he informed them he was suing them for $1666.20 for denying him access to the law library and for failing to provide him with materials necessary to file legal papers. (*Id.*) In the note, Plaintiff offered to settle the suit for $200 from each defendant provided the funds were not applied toward any restitution he owed. (*Id.*)

Rather than responding to the "offer," Defendants Sterling and Peterson filed rule violation charges against Plaintiff, stating Plaintiff attempted to extort money from them in an unlawful manner in violation of California Code of Regulations ("CCR") § 3013, and they were concerned for their safety and security. (Compl., Exh. A.) On June 18, 2007, Plaintiff was charged with extortion and placed in Administrative Segregation ("Ad Seg") by Defendant Marrero pending an investigation. (*Id.* at 3.) Plaintiff contends Defendants filed the charges and placed him in Ad Seg to prevent him from filing his Small Claims Court action. On July 29, 2007, following an internal investigation and evidentiary hearing, Plaintiff was found not guilty of any Rules violations and the charges were dismissed. On August 16, 2007, Plaintiff filed his Small Claims Court lawsuit. (Compl. at 5.) He was ultimately released from Ad Seg on August 22, 2007 after completion of the Chief Disciplinary Officer's review of the proceedings. (Compl., Exh. D.) Plaintiff was subsequently transferred to Mule Creek State Prison on October 2, 2007 and then to High Desert State Prison on November 14, 2007.

Plaintiff sought administrative review of the officers' conduct through the prison appeals process. (Compl., Exh. D.) Plaintiff's grievance was denied at the Second Level of Review and at the Director's Level. (*Id.*) The review reports concluded Defendants acted in good faith in filing their reports and in complying with 15 CCR § 3312(a)(3), and there was no evidence Defendants had maliciously fabricated false charges against Plaintiff. (*Id.*)

Plaintiff alleges claims for violation of his constitutional rights under the First, Eighth, and Fourteenth Amendments. He sues all defendants in their official and individual capacities, seeking injunctive relief and actual and punitive damages.

## II. Legal Standard

The court reviews a magistrate judge's R & R according to the standards set forth in Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636. The court reviews *de novo* those portions of the report to which objection is made. *United States v. Raddatz,* 447 U.S. 667, 673–74, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Fed.R.Civ.P. 12(b)(6) allows for dismissal of a claim in "extraordinary" cases. *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). In evaluating a 12(b)(6) motion, the court must accept the complaint's allegations as true, and construe them in a light most favorable to the plaintiff. *See Concha v. London,* 62 F.3d 1493, 1500 (9th Cir.1995). The court should grant 12(b)(6) relief only where the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988). At the same time, the complaint "must contain sufficient factual mat-

ter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

### III. Discussion

#### A. Tardy Response to the Complaint

In his objections, Plaintiff reiterates his position that Defendants' motion is moot because they responded to the Complaint outside the 20–day period set by Rule 12(a). However, Defendants waived service of process and were thus entitled to 60 days to reply under Rules 4(d)(3) and 12(a)(I)(A)(ii). Defendants' motion was timely filed.

#### B. First Amendment Retaliation Claim

■ Plaintiff alleges his rights under the First Amendment were violated when Defendants took retaliatory action against him by placing him in Ad Seg and subsequently transferring him from Donovan State Prison in an attempt to halt his Small Claims Court lawsuit. Under *Rhodes v. Robinson,* a valid retaliation claim must allege: (1) "a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir.2005) (*citing Resnick v. Hayes,* 213 F.3d 443, 449 (9th Cir.2000)).

In spite of Defendants' argument that Plaintiff failed to adequately allege the fourth and fifth elements under *Rhodes,* the R & R concluded all elements were satisfied. Defendants object to this conclusion, once again contending the fourth

and fifth elements are lacking. (Defs.' Obj. at 4–7).

■■ To adequately plead the fourth element under *Rhodes,* a plaintiff must allege defendant's conduct "would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes,* 408 F.3d at 569. Defendants contend placement in Ad Seg would not normally chill one's rights because there are "specific appeal procedures that are afforded to inmates who are appealing disciplinary matters" and that "inmates regularly file grievances and appeals while housed in administrative segregation." (Defs.' Obj. at 6.) In support, Defendants point to the fact Plaintiff continued his legal efforts from Ad Seg. As the R & R notes, Defendants cannot use the fact Plaintiff actually employed the grievance process as evidence his exercise of his First Amendment rights was not affected. *Rhodes,* 408 F.3d at 568. In addition, conduct by prison officials "need not be particularly great in order to find that rights have been violated" and such conduct is actionable even if it does not otherwise rise to the level of a distinct constitutional violation. *Thomas v. Carpenter,* 881 F.2d 828, 829–30 (9th Cir.1989) (*citing Elrod v. Burns,* 427 U.S. 347, 359 n. 13, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). The Ninth Circuit has expressly held placement in Ad Seg can chill First Amendment activity. *Hines v. Gomez,* 108 F.3d 265, 269 (9th Cir.1997). Defendants attempt to distinguish *Hines,* in which a prisoner's Ad Seg placement flowed from false accusations, whereas in this case, the placement was the result of purportedly good faith accusations by the officers. (Defs.' Obj. at 4.) However, this court is not bound by the conclusions regarding the officers' motives which were made during the prison's internal review process. Construing the facts in a light most favorable to Plaintiff, the

Complaint does allege conduct that would have a chilling effect.

In the alternative, Plaintiff properly supported the fourth *Rhodes* element by alleging harm "more than minimal." *Rhodes,* 408 F.3d at 567 n. 11. In their objections, Defendants argue Plaintiff was not subjected to any measurable harm because Ad Seg conditions roughly approximate general prison conditions and placement in Ad Seg is not inherently punitive. *See* 15 C.C.R. §§ 3341.5, 3343. However, as mentioned in the R & R, Plaintiff need not plead harm that would rise to the level of a separate constitutional violation in order to satisfy this element. The court agrees with the R & R's finding that Plaintiff showed his exercise of First Amendment rights were chilled as a result of his placement in Ad Seg and the resultant mental and financial harms he suffered.

█ To adequately plead the fifth *Rhodes* element, a plaintiff must show the action taken against him did not reasonably advance a legitimate correctional goal. *Rhodes,* 408 F.3d at 567–68. Considering the facts in a light favorable to Plaintiff, Magistrate Judge Papas concluded Plaintiff met the pleading requirements with the allegation that Defendants filed false extortion charges against him in order to prevent him from pursuing his Small Claims Court case. (R & R at 1184.) In their objections, Defendants again argue Defendants filed the charges against Plaintiff in good faith and were required to place Plaintiff in Ad Seg as a result, pursuant to Cal.Code. Regs. 15 § 3335(a). (Defs.' Obj. at 5). Defendants note Magistrate Judge Papas acknowledged the prison's reviews of Plaintiff's claim tended to show Defendants acted with a legitimate purpose, and argue the R & R's contrary conclusion improperly supplied Plaintiff with an essential element of his pleading. (Defs.' Obj. at 7–8.) As stated above, this court is not bound by the conclusions of

the prison's internal review process. Although such evidence may ultimately bear on the strength of Plaintiff's claim, that claim is pled with enough facts to survive a 12(b)(6) motion.

The court adopts the findings and conclusions of the R & R. Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment claim for retaliation is **DENIED.**

### C. Eighth Amendment Claim for Cruel and Unusual Punishment

Plaintiff alleges Defendants violated his Eighth Amendment rights by placing him in Ad Seg and thereby causing him to lose his PIA industry job, to face unhealthy conditions, and to endure mental suffering. (Compl. at 6.) The R & R recommended this claim be dismissed as Plaintiff did not allege: (1) any act or omission by Defendants resulting in a deprivation of Plaintiff's Eighth Amendment rights; (2) any Defendants knew of an excessive risk to Plaintiff's health or safety; or (3) any Defendants were deliberately indifferent to Plaintiff's health or safety. (R & R at 1186.) In his objections, Plaintiff largely reiterates his previous arguments. (Pl. Obj. at 7–10.) In particular, he offers that on July 25, 2007, he and other inmates suffered from severe stomach pain from eating "poisonous" food and were not afforded medical treatment. (*Id.* at 9–10.) On several different dates, unnamed officers ignored his requests for medical treatment for unspecified illnesses. (*Id.* at 9–10.) Plaintiff argues this deliberate indifference by the officers to his health concerns amounted to an Eighth Amendment violation.

█ To properly allege an Eighth Amendment violation, a plaintiff must make both an "objective" showing that a prison official's acts or omissions deprived him of the "minimal civilized measure of

life's necessities," and a "subjective" showing that the official acted with a "sufficiently culpable state of mind." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.2000) (internal citations omitted). In the context of medical care, a prisoner must allege, at a minimum, "deliberate indifference" to his "serious" medical needs. Allegations of an inadvertent failure to provide adequate medical care cannot sustain an Eighth Amendment claim. *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

 Plaintiff asserts both of these elements were met when prison officials failed to properly sterilize the dining area, and then failed to provide a doctor to treat Plaintiff for his subsequent illness. (Pl. Obj. at 9–10.) However, Plaintiff's Complaint lacks a sufficient factual basis to support this claim. The Complaint mentions only a "sick" stomach, which from Plaintiff's "Pain and Suffering Chart," appears to have resolved on its own. The few additional details offered in Plaintiff's objections are neither part of the Complaint nor do they warrant a conclusion Plaintiff suffered any serious medical crisis which required medical treatment. In addition, Plaintiff alleges in conclusory fashion his condition was so severe the officers could only have ignored his request for a doctor out of deliberate indifference. (Pl. Obj. at 10.) Notably, Plaintiff does not allege any of the named defendants tended to him in Ad Seg.

The court adopts the findings and conclusions of the R & R that Plaintiff has not adequately pled the objective or subjective facets of his Eighth Amendment claim. Accordingly, Defendants' motion to dismiss Plaintiff's Eighth Amendment claim for cruel and unusual punishment is **GRANTED.**

### D. Fourteenth Amendment Claim for Denial of Due Process

Plaintiff contends his due process rights under the Fourteenth Amendment were violated when he lost his prison laundry job, was placed in Ad Seg without prior proceedings, and was transferred to another facility. (Compl. at 8.) The R & R examined each aspect of Plaintiff's due process claim and recommended the claim be dismissed. (R & R at 1185–86.) Plaintiff objects to each finding, arguing he has liberty interests in each deprivation sufficient to sustain a Due Process claim. (Pl. Obj. at 11–14.)

 "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). While state statutes and prison regulations may grant prisoners liberty interests sufficient to invoke due process protections, the instances in which due process can be invoked are significantly limited. In fact, the Supreme Court "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardship caused by the prison's challenged action relative to 'the basic conditions' of life as a prisoner." *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir.1996). As concluded by the R & R, none of the alleged deprivations present a liberty interest meeting this standard.

#### 1. Prison Employment

 Despite Plaintiff's arguments to the contrary, he has no liberty or property interest in prison employment. *See Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841, 846 (9th Cir.1985) (finding no constitutionally protected interest in a

work furlough program); *Rhodes,* 452 U.S. at 348, 101 S.Ct. 2392; *Hoptowit v. Ray,* 682 F.2d 1237, 1254–55 (9th Cir. 1982). Not every "grievous loss" suffered at the hands of the state will require the procedural protection of constitutional due process. *Baumann,* 754 F.2d at 843. Although Plaintiff acknowledges prison employment is not guaranteed, he argues prison regulations afford him a "reasonable opportunity" to participate in employment programs and he was unfairly denied this opportunity. (Pl. Obj. at 12.) Nevertheless, due process protections attach only if prison policy establishes a *right* to prison employment. The only statute cited by Plaintiff, Cal.Penal Code § 2933, simply delegates broad authority to the Director of Corrections to allocate worktime resources between categories of prisoners. The court agrees with the R & R that Plaintiff's loss of prison employment does not invoke the protections of the due process clause.

### 2. Placement in Administrative Segregation

 Plaintiff has no constitutionally protected interest in remaining free from administrative segregation. *Sandin v. Conner,* 515 U.S. 472, 485–86, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Pursuant to *Sandin,* a plaintiff must asserts facts related to the conditions or consequences of his placement in Ad Seg which show "the type of atypical, significant deprivation [that] might conceivably create a liberty interest." *Id.* at 486, 115 S.Ct. 2293. A plaintiff must assert a "dramatic departure" from the standard conditions of confinement before due process concerns are implicated. *Id.* at 485, 115 S.Ct. 2293; *see also Keenan v. Hall,* 83 F.3d 1083, 1088–89 (9th Cir.1996). Plaintiff asserts his Ad

Seg placement forced him to endure: (1) 24 hour lock-down; (2) lack of medical treatment; (3) only one shower every three days; (4) poisonous food; and (5) lack of exercise. (Pl. Obj. at 13.) In his objections, Plaintiff contends these conditions meet the "dramatic departure" standard. However, that Ad Seg conditions do not mimic those afforded the general population does not trigger due process concerns. In fact, "[t]he transfer to less amenable quarters for nonpunitive reasons is ordinarily contemplated by a prison sentence."[1] *Sandin,* 515 U.S. at 479, 115 S.Ct. 2293. The court agrees with and adopts the conclusions of the R & R.

### 3. Transfer to Another Facility

 As set forth in the R & R, Plaintiff has no liberty interest in being housed at a particular institution. *Wilkinson v. Austin,* 545 U.S. 209, 223, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). In his objections, Plaintiff again contends he was transferred against his will in an attempt to stop his small claims court lawsuit, and that the transfer caused harm to his "life, liberty, and property." (Pl. Obj. at 13.) As discussed above, the alleged effect of Plaintiff's transfer on his lawsuit is properly addressed within the context of his First Amendment claim. Prisoners may pursue a retaliation claim without establishing "an independent constitutional interest." *Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir.1995). The transfer, standing alone, does not amount to a due process violation.

In sum, the court therefore adopts the findings of the R & R and **GRANTS** Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claim.

1. The only condition Plaintiff alleges that would raise concern is his assertion that he was fed poisonous food. Plaintiff offers no facts to support this allegation. Presumably it relates to Plaintiff's assertion that the tables were not properly sterilized.

**1178**

### E. Sixth Amendment Claim

To the extent Defendants construed a Sixth Amendment claim from Plaintiff's Complaint, they moved the court to dismiss it. Plaintiff concedes he mentioned the Sixth Amendment only in the context of his Small Claims Court complaint and the events leading up to it. He did not intend to state a separate claim for Sixth Amendment violations here. The motion to dismiss is therefore **DENIED** as moot.

### F. Eleventh Amendment Immunity

 The Eleventh Amendment prohibits damages actions against state officials acting in their official capacities. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In his Complaint, Plaintiff clearly intends to sue each defendant in his or her official capacity. The R & R properly concluded Eleventh Amendment immunity applies to the damages aspect of Plaintiff's claims against Defendants in their official capacities.[2] Accordingly, Defendants' motion to dismiss is **GRANTED** as to this aspect of Plaintiff's claims.

### G. Qualified Immunity

 Defendants Sterling, Peterson, and Marrero move to dismiss Plaintiff's claims for civil damages against them in their individual capacities. Defendants argue they are entitled to qualified immunity because their conduct did not violate any clearly-established right under the circumstances in which they acted. (Mot. at 14.) Applying the two-step analysis of *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), as modified by *Pearson v. Callahan*, — U.S. ——, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the R & R determined Plaintiff satisfied the first prong with his First Amendment retalia-

tion claim, and the second prong with allegations Defendants knew he was simply trying to settle his claim against them. (R & R at 1189.) The R & R concludes Defendants are not entitled to qualified immunity as to Plaintiff's First Amendment claim.

In their objections, Defendants contend Plaintiff's First Amendment claim fails and therefore cannot be used to satisfy the first prong under *Saucier*. Defendants also argue the R & R improperly relies on Plaintiff's version of events rather than the results of the internal appeals process which found the officers had acted in good faith. (Defs.' Obj. at 10.) The court addressed these arguments to Plaintiff's advantage above. *See Pratt*, 65 F.3d at 806 ("the prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes.") (*citing Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir.1995)). At this stage, construing the Complaint in a light favorable to Plaintiff, particularly as a *pro se* litigant, the court adopts the R & R's conclusion that Defendants are not entitled to a favorable motion to dismiss ruling. Defendants' motion to dismiss on qualified immunity grounds is **DENIED** with respect to the First Amendment retaliation claim and **GRANTED** with respect to all other claims.

### H. Respondeat Superior

 In part, Plaintiff brings his § 1983 claims against Defendant Hernandez under a respondeat superior theory. (Compl. at 8.) The R & R notes respondeat superior liability does not exist under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, to state a claim against Her-

---

**2.** The case cited by Plaintiff in his objections, *Hayes v. Faulkner County*, 388 F.3d 669, 675 (8th Cir.2004) is a qualified immunity case rather than an Eleventh Amendment immunity case.

nandez, Plaintiff must show Hernandez was personally involved in the constitutional violation, or a significant causal connection between his wrongful conduct and the constitutional violations. *See Redman v. County of San Diego,* 942 F.2d 1435, 1446 (9th Cir.1991). That causal connection may be supported with allegations the supervisor "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the injury." *Larez v. City of Los Angeles,* 946 F.2d 630, 646 (9th Cir.1991) (citations omitted).

■ Plaintiff did allege Defendant Hernandez was directly involved in his constitutional violations because he was a defendant in the Small Claims Court case and because he knew Plaintiff's rights were being violated and did nothing to stop the violations. In his objections, Plaintiff adds that Hernandez approved Plaintiff's transfer out of Donovan. (Pl. Obj. at 17–18.) These conclusory statements are wholly unsupported by specific facts showing Defendant Hernandez not only knew of the other officers' conduct, but knew that conduct was motivated by retaliatory or other unlawful motives. Although Plaintiff need not plead this claim with specificity under Rule 9, more than formulaic statements are required. *Ashcroft v. Iqbal,* 129 S.Ct. at 1949. The court therefore agrees with the findings of the R & R. Defendant Hernandez's motion to dismiss is **GRANTED.**

### I. Injunctive Relief

■ In his Complaint, Plaintiff seeks an injunction ordering Defendants to transfer him back to Mule Creek State Prison and to place him immediately in an industry job. (Compl. at 12–13.) Defendants moved to dismiss Plaintiff's request, arguing they do not have the authority to

grant such relief.[3] In particular, Defendants claim all decisions regarding prisoner transfer and work detail are handled by committee pursuant to 15 CCR §§ 3040 and 3379. (Defs.' Obj. at 11.) Plaintiff asserts, in conclusory fashion, that he "knows" Defendants are able to comply and urges the court to issue an order to the Director of CDCR or the Warden of High Desert State Prison, neither of whom are named parties in this case. (Pl. Reply at 8.) Plaintiff's arguments are unavailing. Because the named Defendants appear unable to comply with the injunction Plaintiff seeks, the court adopts the R & R's conclusions. Defendants' motion to dismiss is **GRANTED.**

### IV. Conclusion

Based on the foregoing, the court hereby adopts the findings and recommendations of the R & R. The court therefore **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. In particular, the court **DENIES** Defendants' motion to dismiss Plaintiff's § 1983 claim for violation of his First Amendment rights (including Defendants' motion to dismiss this claim on qualified immunity grounds) and **GRANTS** the motion to dismiss as to all other claims. Accordingly, Plaintiff's § 1983 claims for violation of his Eighth and Fourteenth Amendments, his claims against Defendant Hernandez, and his claims for injunctive relief are **DISMISSED without prejudice** and with leave to amend. Plaintiff's claims for damages against Defendants in their official capacities are **DISMISSED with prejudice.**

Plaintiff is granted leave to file a first amended complaint consistent with this order. *See Lopez v. Smith,* 203 F.3d 1122, 1128 (9th Cir.2000) (dismissal of *pro se* complaint for failure to state claim is prop-

---

**3.** The R & R does not address this issue, so the court reviews it *de novo.*

er only where obvious that amendment would be futile). If Plaintiff wishes to file a first amended complaint, he must do so by *September 28, 2009.* If Plaintiff does not file an first amended complaint by that date, the case will proceed on his § 1983 retaliation claim and Defendants are instructed to answer in accordance with the Federal Rules of Civil Procedure. The Clerk of Court is instructed to close the case file.

**IT IS SO ORDERED.**

REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (DOC. # 14)

LEO S. PAPAS, United States Magistrate Judge.

On June 26, 2008, Gregory Lee Gray (hereafter "Plaintiff") an inmate proceeding *pro se* and *in forma pauperis,* filed a Complaint pursuant to 42 U.S.C. § 1983 (hereafter "Complaint") claiming that his civil rights were violated in June 2007 when he was housed at Donovan State Prison. He sues all Defendants in both their official and individual capacities, and he seeks injunctive relief and damages, including punitive damages. Defendants have filed a Motion to Dismiss the Complaint ("Motion"). Plaintiff has filed an Opposition to the Motion. The Court, having reviewed the Complaint, the exhibits attached thereto, the Motion and Opposition and GOOD CAUSE APPEARING HEREBY RECOMMENDS that Defendants' Motion to Dismiss be GRANTED in part and DENIED in part

**I. *Factual Allegations***

On January 22, 2007, while housed at Donovan State Prison, Plaintiff filed a grievance against Defendants Hernandez,

Marrero, Sterling, and Peterson, complaining that they had denied him access to the law library and the to the courts. (Complaint at 3). At the time, Hernandez was acting Warden, Marrero was serving as Captain of facility 3 yard and Sterling and Peterson worked in the law library. *Id.* Plaintiff exhausted his appeals of this grievance to the third level of review. Thereafter, Plaintiff decided to file a suit in Small Claims Court against the same defendants using Small Claims form SC–100. *Id.* Prior to filing the suit, and in what he believed to be accordance with Small Claims form SC–100, Plaintiff attempted to "settle" his case with Defendants Sterling and Peterson by making the following offer:

> You are being sued in the court for the sum of: "$1666.20, for denying the right for me to have "General Law Library Usage" and for not providing me legal materials to file on a court deadline issued by the U.S. Supreme court ruling in the case of *California v. Cunningham,* denied me meaningful access to courts. Which denied me my rights under the 6th and 14th Amendment right to have representation. I' m willing to settle if you pay me the sum of $200 dollars, and "NO" Restitution is taken out of my account.

On June 18 and June 28, 2007 respectively, in response to Plaintiff's offer, Defendants Sterling and Peterson filed CDC violation charges of California Code of Regulations (hereafter "CCR") § 3013, stating that Plaintiff attempted to extort money from them in an unlawful manner and that they were concerned for their safety and security.[1] (Exhibit A to the Complaint). On June 18, 2007, Plaintiff was charged with extortion and placed in

---

1. 15 CCR § 3013 states that "inmates may not attempt to gain special consideration or favor from other inmates, employees, institu-

tion visitors or any other person by the use of bribery, threat or other unlawful means."

Administrative Segregation (hereinafter "Ad Seg") by Defendant Marrero pending investigation into the matter. (Complaint at 3 and Exhibit A to the Complaint)). Plaintiff claims that Defendants filed the charges, which were false, and in order to stop him from pursuing his Small Claims Court action. (Complaint at 4).

On August 16, 2007, while Plaintiff was in Ad Seg, Plaintiff filed his Small Claims Court lawsuit.[2] (Complaint at 5). In Ad Seg, Plaintiff was given an Investigative Reporter who took statements from witnesses and Defendants. (Complaint at 4). On July 29, 2007, Plaintiff was given an evidentiary hearing by Correctional Lieutenant R.J. Shelar and was found not guilty and all charges of Rules Violation 15 CCR § 3013 were dismissed. (Complaint at 4-5). On August 22, 2007, Plaintiff was released from Ad Seg. (Exhibit D to the Complaint).

On September 20, 2007, after Plaintiff was released from Ad Seg, he filed a grievance regarding the incident. (Exhibit D to the Complaint). The grievance was reviewed and processed in accordance with the normal appeals process. (Exhibit D to the Complaint). Plaintiff's grievance was denied at the Second Level of Review and at the Director's Level (Exhibit D to the Complaint). At both levels, it was determined that Defendants acted in good faith in filing their reports and in complying with 15 CCR § 3312(a)(3) and that there was no evidence to indicate that they had maliciously fabricated false documentation in order to affect Plaintiff's welfare.[3] (Exhibit D to the Complaint). On October 2, 2007, while his Small Claims Court action was pending, Plaintiff was transferred to

Mule Creek State Prison. (Complaint at 9). On November 14, 2007, Plaintiff was transferred to High Desert State Prison where he is currently incarcerated. (Complaint at 17).

## II. Defendants' FED.R.CIV.P. 12(b)(6) Motion

Defendants filed a Motion to Dismiss Plaintiff's Complaint pursuant to FED. R.CIV.P. 12(b)(6), for failure to state a claim upon which relief can be granted (hereafter, "Motion"). Defendants assert: (1) Plaintiff failed to state a claim of retaliation under the First Amendment; (2) Plaintiff failed to state a claim under the Fourteenth Amendment; (3) Plaintiff failed to state a claim of cruel and unusual punishment under the Eighth Amendment; (4) Plaintiff failed to state a claim under the Sixth Amendment; (5) Plaintiff cannot base a constitutional claim against Defendant Hernandez on a theory of Respondeat Superior; (6) Defendants Sterling, Peterson, and Marrero are protected from Plaintiff's suit by qualified immunity; (7) Defendants do not have the authority to comply with the injunction plaintiff seeks; (8) Defendants are absolutely immune from liability for damages in their individual capacities and under the Eleventh Amendment. On March, 16, 2009, Plaintiff filed an Opposition to the Motion to Dismiss (hereinafter "Opposition").

### A. Standard of Review

■■■ A motion to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. FED. R. CIV. P. 8(a)(2) requires only "a short and plain

---

**2.** On August 16, 2007, the suit was filed in the San Diego Superior Court as Case Number 37–2007–00014605–SC–SC–SC.

**3.** § 3312 details the disciplinary methods used in the California Department of Correc-

tions and Rehabilitation. It states with regard to Rules Violation Reports that "when misconduct is believed to be a violation of law or is not minor in nature, it shall be reported on a CDC form 115, Rules Violation Report."

statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). Dismissal of a claim is appropriate only where the complaint lacks a cognizable theory. *Bell Atlantic*, 550 U.S. at 553–565, 127 S.Ct. 1955. The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *N.L. Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986); *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). The court does not look at whether the plaintiff will "ultimately prevail." *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■■■ "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n. 1(1991) (quoting *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)). "[W]hen the allegations of the complaint are refuted by an attached document, the Court need not accept the allegations as being true." *Roth*, 942 F.2d at 625 n. 1 (citing *Ott v. Home Savings & Loan Ass'n*, 265 F.2d 643, 646 n. 1 (9th Cir.1958)).

■■■ "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." *Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998). Thus, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings. *Id.* This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to FED. R. CIV. P. 12(b)(6). *Id.* (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir.1993); 2 *Moore's Federal Practice*, § 12.34[2] (Matthew Bender 3d ed.) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).")).

■■■ Finally, where a plaintiff appears *in propria persona* in a civil rights case, the Court must also be careful to construe the pleadings liberally and afford plaintiff any benefit of the doubt. *See Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir.1988); *Bretz v. Kelman*, 773 F.2d 1026, 1027, n. 1 (9th Cir.1985) (en banc). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir.1992); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir.1987) ("Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel."). In giving liberal interpretation to a pro se civil rights complaint, however, a court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir.1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir.1977) ("Conclusory allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.").

Thus, at a minimum, even the pro se plaintiff "must allege with at least some degree of particularity overt acts which defendants engaged in that support [his] claim." *Jones v. Community Redevelopment Agency,* 733 F.2d 646, 649 (9th Cir.1984).

## B. First Amendment—Retaliation for Protected Conduct

Plaintiff claims that Defendants' actions violated his rights under the First Amendment by falsely charging him with extortion, placing him in Ad Seg, and later transferring him from Donovan State Prison in an attempt to derail his Small Claims Court lawsuit against them and for no legitimate correctional purpose. (Complaint at 3–4, 8). He claims that he not only suffered "mental torture" at losing his First Amendment rights but also, that as a result of this violation, he lost his laundry job which resulted in actual monetary damage. (Complaint at 5). Defendants maintain that Plaintiff has failed to allege sufficient facts to adequately articulate a First Amendment retaliation claim. (Motion at 5).

The Ninth Circuit Court of Appeals has established a standard for claiming retaliation under the First Amendment in *Rhodes v. Robinson,* 408 F.3d 559 (9th Cir.2005). Under this standard, a viable claim of First Amendment retaliation in the prison context is met if five elements are established: (1) an assertion that a state actor took some adverse action against an inmate; (2) because of; (3) that inmates's protected conduct, and that such action; (4) chilled the inmate's exercise of his First Amendment rights, and; (5) the action did not reasonably advance a legitimate correctional goal. *Id.* at 567–568. Legitimate correctional goals include preserving institutional order and discipline. *See Barnett v. Centoni,* 31 F.3d 813 (9th Cir.1994).

Plaintiff's allegations meet this test by asserting that the Defendants took action against him because he asserted his First Amendment rights and their actions did not advance a legitimate correctional goal.

Defendants argue that Plaintiff is unable to meet both the fourth and fifth element of the test. The Court disagrees. Under the standard established in *Rhodes,* Plaintiff must show that his First Amendment rights were chilled as a result of Defendants' actions. Defendants argue that since Plaintiff was not estopped from filing his action his rights were not chilled.[4] (Motion at 6). However, Plaintiff need not show that his rights were actually chilled, only that the defendants' acts "would chill or silence a person of ordinary firmness from future First Amendment activities". *Rhodes,* 408 F.3d at 569 (internal citations omitted).

> *There was only one catch and that was Catch–22, which specified that a concern for one's own safety in the face of dangers that were real and immediate was the process of a rational mind. Orr was crazy and could be grounded. All he had to do was ask; and as soon as he did, he would no longer be crazy and would have to fly more missions. Orr would be crazy to fly more missions and sane if he didn't, but if he was sane, he had to fly them. If he flew them, he was crazy and he didn't have to. Yossarian was moved very deeply by the absolute simplicity of this clause of Catch–22 and let out a respectful whistle.*
>
> *"That's some catch, that Catch–22," he observed.*
>
> *"It's the best there is," Doc Daneeka agreed.*

Joseph Heller, *Catch–22,* at 47 (6th ed.1976), *Rhodes,* 408 F.3d at 566–567.

4. See Footnote 2.

Defendants cannot use the fact that Plaintiff is unusually determined as proof that his rights were not chilled. *Id.* In the alternative, Plaintiff could satisfy this prong by alleging harm. *Rhodes* suggests that a plaintiff need not plead the chilling effect if he pleads "harm that is more than minimal," *Rhodes,* 408 F.3d at 567, n. 11. Here, Plaintiff claims that he was harmed both mentally and monetarily as a result of Defendants' actions. Plaintiff need not plead harm that would rise to a level of due process violation in order to show a First Amendment retaliation claim. *Rhodes,* 408 F.3d at 568. (*See Hines v. Gomez,* 108 F.3d 265 at 269, holding that the retaliatory imposition of a ten-day period of confinement and the loss of television justified by a false allegation of rules violation by a prison officer violated plaintiff's First Amendment rights.) Pursuant to *Rhodes,* Plaintiff may show a chilling effect or harm that is more than minimal in order to meet the fourth requirement. Based on a liberal construction of the facts, Plaintiff satisfies either or both a chilling effect and a more than minimal harm.

Under the fifth element of *Rhodes,* Plaintiff must show that the action taken against him did not reasonably advance a legitimate correctional goal. Defendants argue that placement in Ad Seg pending an investigation of serious allegations is in accordance with 15 CCR §§ 3335 and 3336. Therefore, placement of Plaintiff in Ad Seg, while an investigation into the allegations was made, met legitimate correctional goals. The Court generally agrees with this assertion. However, the Court gives Plaintiff the benefit of the doubt at this stage of the proceedings. Plaintiff's Complaint, taken as a whole, alleges that after Plaintiff presented Defendants Sterling and Peterson with his settlement offer prior to filing his Small Claims Court suit, these Defendants filed charges against him for violation of 15 CCR § 3013. Thereaf-

ter, Plaintiff was charged with extortion and placed in Ad Seg by Defendant Marrero. Plaintiff claims that the charge of extortion was false and made in order to stop him from pursuing his Small Claims Court action. Filing false charges against Plaintiff and placing him in Ad Seg for his attempt to settle a claim prior to his filing a lawsuit does not preserve institutional order and discipline, and does not advance a legitimate correctional goal. *Barnett,* 31 F.3d at 815–816. The type of conduct engaged in by Defendants "runs afoul of the (First) Amendment because of the danger of 'smothering all discussion looking toward eventual institution of litigation.' " *NAACP v. Button,* 371 U.S. 415, 434, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), *Owens v. Rush,* 654 F.2d 1370 (10th Cir. 1981), *Rizzo v. Dawson,* 778 F.2d 527, 531–532 (9th Cir.1985). Accordingly, the Court RECOMMENDS that Defendants' Motion to Dismiss Plaintiff's First Amendment claims be DENIED.

## C. Eighth Amendment—Cruel and Unusual Punishment

Plaintiff claims that Defendants violated his Eighth Amendment rights by causing him to lose his PIA Industry Job and by forcing him to reside in Ad Seg where conditions were "unhealthy" and where he suffered mentally. (Complaint at 6). Defendant maintains that Plaintiff has failed to describe conditions that rise to the level of a constitutional violation. (Motion at 11).

The Eighth Amendment standards for conditions in disciplinary housing are the same as those in the general prison population. *Hoptowit v. Ray,* 682 F.2d 1237, 1258 (9th Cir.1982). To show Plaintiff's Eighth Amendment rights have been violated, Plaintiff must make two showings: "First, the plaintiff must make an 'objective' showing that the deprivation was 'suf-

ficiently serious' to form the basis for an Eighth Amendment violation. Second, the plaintiff must make a 'subjective' showing that the prison official acted 'with a sufficiently culpable state of mind.'" *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.2000) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). Finally, the Court must analyze each claimed violation in light of these requirements, for Eighth Amendment violations may not be based on the "totality of the conditions" at prison. *Hoptowit*, 682 F.2d at 1246–47; *Wright v. Rushen*, 642 F.2d 1129, 1132 (9th Cir.1981).

 Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the "minimal civilized measure of life's necessities." *Johnson*, 217 F.3d at 731 (internal citations omitted). This objective component is satisfied so long as the institution "furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Hoptowit*, 682 F.2d at 1246; *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Wright*, 642 F.2d at 1132–33. Under the subjective standard, deliberate indifference requires a showing that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. A prison official is deliberately indifferent only if he knows that a prisoner faces a substantial risk of serious harm and disregards it by failing to take reasonable steps to abate it. *Id.* Delay in treatment must cause substantial harm. (*See Wood v. Housewright*, 900 F.2d 1332 (9th Cir.1990)).

 Here, the Court construes Plaintiff's Complaint to allege that during Plaintiff's time in Ad Seg, he suffered due to the "unhealthy environment" and due to the denial of medical treatment (Complaint at 6). Plaintiff claims that while he was in Ad Seg, the officers were "lazy" and would "barely sterilize the food serving area" and that when he demanded a doctor, he was not given access to one. (Complaint at 6). However, even if Plaintiff's claims are liberally construed, they do not provide the required showing that Plaintiff's treatment in Ad Seg meets either the objective or subjective requirements to demonstrate a violation of the Eighth Amendment. *Hoptowit*, 682 F.2d at 1258 His claim regarding sanitation does not suggest that his basic needs were not met, only that the tables were only minimally sterilized. How Plaintiff knows the level of sterilization of the tables is not explained. However, the fact that the tables were not sterilized to Plaintiff's apparent expectations is not enough to rise to the level of an Eighth Amendment violation.

While Plaintiff claims to have suffered greatly and outlines his suffering in his pain and suffering chart (Exhibit E to the Complaint), he does not describe an ailment in which he required medical attention and was denied access to a doctor. He merely states that he did not receive a doctor's attention when he demanded it. (Complaint at 6). Plaintiff offers no explanation of the ailments from which he was suffering or why he needed to see a doctor. He states that he suffered "a 'lot' of mental stress" but does not explain further the specific nature of the condition. (Complaint at 6). Under the facts alleged, there is no basis for finding that Defendants deliberately denied Plaintiff medical care, let alone that they acted with deliberate indifference to his health and safety. Additionally, none of the Defendants tended to Plaintiff while he was in Ad Seg and his Complaint does not specify who denied him medical care. Unless he can connect

one or more of the Defendants to his treatment in Ad Seg, this claim can not succeed. *Hoptowit,* 682 F.2d at 1258, *Johnson,* 217 F.3d at 731

In sum, Plaintiff has failed to allege (1) any act or omission by Defendants which resulted in the deprivation "the minimal civilized measure of life's necessities," (2) that any of the Defendants herein knew of an excessive risk to his health or safety, or (3) that any of the Defendants herein were deliberately indifferent to his health and safety. Absent such allegations, Plaintiff's claim for violation of his Eighth Amendment right against cruel and unusual punishment is properly dismissed, without prejudice. Accordingly, this Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claims be GRANTED WITHOUT PREJUDICE.

### D. Fourteenth Amendment—Denial of Due Process

Plaintiff's Fourteenth Amendment claims appear to be three-fold. He argues that his due process rights were violated when (1) his job was taken from him without due process (2) he was placed in Ad Seg without any prior proceedings and (3) when he was transferred to another facility. (Complaint at 8). Defendants claim that Plaintiff has no liberty interest at stake with regard to any of these areas and therefore he can not properly claim a violation of due process under the Fourteenth Amendment. (Motion at 9).

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). State statutes and prison regulations may grant prisoners liberty interests sufficient to invoke due process protections. *Meachum v. Fano,* 427 U.S. 215, 223–27, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). However, the Supreme Court has significantly limited the instances in which due process can be invoked. In *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardship caused by the prison's challenged action relative to the 'basic conditions' of life as a prisoner." *Mitchell v. Dupnik,* 75 F.3d 517, 522 (9th Cir.1996) (citing *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293).

### 1. Prison Employment

The due process clause of the Fourteenth Amendment does not create a liberty or property interest in prison employment. *See Baumann v. Arizona Dep't of Corrections,* 754 F.2d 841, 846 (9th Cir. 1985); *Ingram v. Papalia,* 804 F.2d 595, 596 (10th Cir.1986) (per curiam).[5] California Penal Code § 2933 delegates broad authority to the Director of Corrections to allocate worktime resources between various categories of prisoners. *see, e.g., In re Barnes,* 176 Cal.App.3d 235, 221 Cal.Rptr. 415 (1985) (Department of Corrections has established priority list; segregation unit or discipline-prone inmates are at bottom of list). There is also no constitutional or statutory guarantee that work programs

---

**5.** Although the California legislature intended the worktime sentence reducing scheme to instill a work ethic, *see People v. Valladares,* 162 Cal.App.3d 312, 321, 208 Cal.Rptr. 604 (1984), it did not create an absolute right to participate in work programs: the legislature created only a "reasonable opportunity." *See* CAL. PEN.CODE § 2933(b); *Toussaint v. McCarthy,* 801 F.2d 1080, 1095 (9th Cir.1986). Moreover, a prisoner's "reasonable opportunity to participate" must be "consistent with institutional security and available resources." *See* CAL.PENAL CODE § 2933(b).

will be available. *People v. Caruso,* 161 Cal.App.3d 13, 16 n. 5, 207 Cal.Rptr. 221 (1984). Since Plaintiff has no liberty interest in retaining his prison job, there are no grounds to find that he was deprived of his rights under the Fourteenth Amendment.

### 2. Placement in Segregation

The Supreme Court has specifically held that prisoners have no constitutionally protected liberty interest in remaining free of disciplinary segregation. *Sandin,* 515 U.S. at 485–486, 115 S.Ct. 2293. Under *Sandin,* state-created liberty interests invoking procedural due process protection are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S.Ct. 2293 (citations omitted).

Pursuant to *Sandin,* Plaintiff must assert facts related to the conditions or consequences of his placement in Ad Seg which show "the type of atypical, significant deprivation [that] might conceivably create a liberty interest." *Id.* at 486, 115 S.Ct. 2293. The *Sandin* Court relied on three factors to determine that the plaintiff therein did not possess a liberty interest in avoiding disciplinary segregation: (1) disciplinary and discretionary segregation were essentially the same; (2) comparison between conditions in the general population and conditions in confinement showed that the plaintiff suffered no "major disruption in his environment"; and (3) the length of plaintiff's sentence was not extended. *Id.* at 486–87, 115 S.Ct. 2293.

Here, Plaintiff fails to allege any facts from which the Court could find that there were atypical and significant hardships imposed upon him as a result of Defendants' actions. Plaintiff must allege "a dramatic

departure from the basic conditions" of his confinement that would give rise to a liberty interest before he can claim a violation of due process. *Id.* at 485, 115 S.Ct. 2293; *see also Keenan v. Hall,* 83 F.3d 1083, 1088–89 (9th Cir.1996), *amended by* 135 F.3d 1318 (9th Cir.1998). As discussed above, even under a liberal construction of the Complaint, Plaintiff does not offer allegations that suggest his time in Ad Seg was a dramatic departure from the conditions of the general population. Additionally, Plaintiff does not suggest that his sentence was extended due to his time in Ad Seg. Since Plaintiff has failed to allege a liberty interest in remaining free from placement in Ad Seg, there are no grounds for finding that his rights under the Fourteenth Amendment were violated when he was placed in Ad Seg.

### 3. Transfer to Another Facility

■ An inmate does not have a liberty interest in being housed at a particular institution or in avoiding isolation or separation from the general prison population unless the proposed transfer will subject the inmate to exceptionally more onerous living conditions, such as those experienced by inmates at a "Supermax" facility. *Wilkinson v. Austin,* 545 U.S. 209, 223, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (holding that, despite the general rule that an interprison transfer does not implicate the Due Process Clause, a transfer to a so-called "Supermax" facility at which a prisoner would experience exceptionally more onerous conditions may implicate the Due Process Clause); *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) (holding that a mere transfer from one facility to another does not implicate the Due Process Clause, regardless of whether the transfer is the result of the inmate's misbehavior or is punitive in nature if there is no State law to the contrary).

California law does not create a liberty interest in non-consensual prison transfer requiring procedural due process protection. CAL.PENAL CODE § 5080; 15 CCR § 3379. Pursuant to *Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir.1995), while prisoners generally have no constitutionally protected liberty interest in remaining in a given facility, if they allege retaliation, they may pursue that claim without having to establish "an independent constitutional interest." *Id.* However a retaliation claim is properly handled under the First Amendment analysis. *Id.* Therefore, while there is no liberty interest in remaining free from non-consensual prison transfer sufficient to invoke the protection of the Fourteenth Amendment, Plaintiff may pursue his transfer claim as a retaliation claim under the First Amendment.

Accordingly, the Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claims be GRANTED WITHOUT PREJUDICE.

**E. Sixth Amendment Claim**

Plaintiff's Complaint alleges a violation of his Sixth Amendment rights. (Form Complaint at 3). However in the Opposition to the Motion, Petitioner classifies the Sixth Amendment arguments as "information leading up to his § 1983 Civil Complaint" and not as claims to be adjudicated. (Opposition at 19). Accordingly, the Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's Sixth Amendment claims be GRANTED WITH PREJUDICE.

**F. Eleventh Amendment Immunity**

The Eleventh Amendment prohibits damages actions against state officials acting in their official capacities. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). It does not, however, "bar actions against state officers in their official capacities if the plaintiffs seek only a declaratory judgment or injunctive relief." *Chaloux v. Killeen,* 886 F.2d 247, 252 (9th Cir.1989) (internal citations omitted). Nor does it bar damage actions against state officials in their personal capacities. *See Hafer v. Melo,* 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). The Eleventh Amendment prohibits only damage actions against the "official's office;" actions that are in reality suits against the state itself-rather than against its individual officials. *See id.* at 26–27, 112 S.Ct. 358.

Here, Plaintiff clearly indicates an intent to sue Defendants for damages in both their individual and official capacities. (Complaint at 11). For this reason it is RECOMMENDED that the Defendant's Motion to Dismiss be GRANTED with prejudice with respect to Plaintiff's claim for damages against Defendants in their official capacities.

**G. Qualified Immunity**

Defendants Sterling, Peterson, and Marrero assert that they are protected from suits for civil damages due to the doctrine of qualified immunity because their conduct did not violate any clearly-established right under the circumstances in which they acted. (Motion at 14). Defendants further claim that they are entitled to dismissal pursuant to FED.R.CIV.P. 12(b)(6) based on their qualified immunity. The entitlement to qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The defense of "qualified immunity" protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73

L.Ed.2d 396 (1982). This standard " 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam) (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)); *Jeffers v. Gomez,* 267 F.3d 895, 909–910 (9th Cir.2001).[6]

The Supreme Court recently held that the test for qualified immunity in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), is no longer a rigid two step analysis. *Pearson v. Callahan,* — U.S. ——, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) However, the *Saucier* analysis is still pertinent for qualified immunity purposes. *Pearson,* 129 S.Ct. at 818. Pursuant to *Saucier,* the first step in a qualified immunity analysis is, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151; *Jackson v. City of Bremerton,* 268 F.3d 646, 650 (9th Cir. 2001); *Johnson v. County of Los Angeles,* 340 F.3d 787, 791 (9th Cir.2003) (noting that because qualified immunity is " 'an entitlement not to stand trial' ... courts, not juries, [must] settle the ultimate questions of qualified immunity") (quoting *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151; *Haynie v. County of Los Angeles,* 339 F.3d 1071, 1078 (9th Cir.2003). The second step of the qualified immunity analysis is whether "it would be clear to a reasonable officer that (Plaintiff's) conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151, *Wilkins v. City of Oakland,* 350 F.3d 949, 954 (9th Cir. 2003).

As previously noted in this Report and Recommendation, Plaintiff has set forth sufficient allegations to support a First Amendment retaliation claim against Defendants Sterling, Peterson and Marrero. (See Section II. B.) As a result, Plaintiff satisfies the first prong of *Saucier* because the facts alleged in the Complaint show that Defendants' conduct violated a constitutional right. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151.

With regard to the second prong of the *Saucier* analysis, Plaintiff alleges that it was clear to Defendants that Plaintiff was attempting to settle his claim of denial of access to the law library and to the courts, prior to filing a lawsuit against them. Plaintiff's offer plainly states that he was willing to settle his claim for specified terms. Thus, based on these allegations, it is reasonable to conclude that all Defendants had to do in the face of the offer was to accept or reject it, or make a counter-offer. Consequently, based on Plaintiff's allegations, a reasonable officer would not have considered Plaintiff's conduct to be unlawful, nor could such an officer reasonably believe that trying to settle a claim, prior to filing a lawsuit, constituted unlawful activity. As a result, Plaintiff's allegations satisfy the second prong of the *Saucier* analysis. Therefore, the Court RECOMMENDS that Defendants' Motion to Dismiss in this regard be DENIED.

---

**6.** The affirmative defense of qualified immunity does not extend to claims for declaratory or injunctive relief. *Keenan v. Hall,* 83 F.3d 1083, 1093 (9th Cir.1996) (citing *American Fire, Theft & Collision Managers, Inc. v. Gillespie,* 932 F.2d 816, 818 (9th Cir.1991)). The Court takes notice that Plaintiff is also seeking injunctive and declaratory relief.

## H. Respondeat Superior

Plaintiff claims that Defendant Hernandez is guilty of violating his civil rights in violation of § 1983 under a theory of Respondeat Superior. (Complaint at 8). Defendants claim that even if Plaintiff's civil rights were violated, none of his claims are viable against Defendant Hernandez because he was not personally involved with, or even aware of, any of the matters of which Plaintiff complains (Motion at 13).

Respondeat Superior liability does not exist under § 1983. *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir.2002) (citations omitted). To hold a person "liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Id.* A supervisory official may be liable only if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Redman v. County of San Diego,* 942 F.2d 1435, 1446 (9th Cir.1991) Causation may be established only by showing that the supervisor set in motion a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict the injury. *Watkins v. City of Oakland,* 145 F.3d 1087, 1093 (9th Cir.1998).

Plaintiff argues that a causal connection exists between Defendant Hernandez's conduct and Plaintiff's injuries because he was a named defendant in Plaintiff's Small Claims Court action and that he knew Plaintiff's rights were being violated and did nothing. (Complaint at 8). Plaintiff's Complaint does not allege that Hernandez personally participated in his alleged constitutional violations. As a result, the Court RECOMMENDS that Defendants' Motion to Dismiss in this regard be GRANTED WITHOUT PREJUDICE.

## III. *Conclusion*

For the reasons set forth herein, it is RECOMMENDED that an order be entered as follows:

(1) The Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's First Amendment claims be DENIED.

(2) The Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claims be GRANTED WITHOUT PREJUDICE.

(3) The Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claims be GRANTED WITHOUT PREJUDICE.

(4) The Court RECOMMENDS Defendants' Motion to Dismiss Plaintiff's Sixth Amendment claims be GRANTED WITH PREJUDICE.

(5) The Court RECOMMENDS Defendant's Motion to Dismiss with regard to Plaintiff's claim for damages against Defendants in their official capacity be GRANTED WITH PREJUDICE.

(6) The Court RECOMMENDS that Plaintiff's claim for Damages against Defendants in their Individual Capacities be DENIED.

(7) The Court RECOMMENDS that Plaintiff be given a reasonable amount of time to amend his Complaint.

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than *June 15, 2009,* any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with

the Court and served on all parties no later than *July 6, 2009*. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

DATED: May 13, 2009.